**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KASHYAP P. PATEL,

                Plaintiff,

      v.

ATLANTIC MONTHLY GROUP LLC;
SARAH FITZPATRICK,

                Defendants.

Case No.: 1:26-cv-01329-EGS

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
**OF MOTION TO DISMISS THE COMPLAINT**

Katherine M. Bolger (Bar ID: NY0205)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com

Laura R. Handman (Bar ID: 444386)
Alison Schary (Bar ID: 1014050)
Meenakshi Krishnan (Bar ID: 1617229)
Azeezat Adeleke (Bar ID: 90011862)
1301 K Street, NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
laurahandman@dwt.com
alisonschary@dwt.com
meenakshikrishnan@dwt.com
azeezatadeleke@dwt.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 3

    A.   The Parties ......................................................................................................... 3

    B.   The *Atlantic* Article........................................................................................... 4

    C.   Fitzpatrick's Efforts To Reach Out to Director Patel and the FBI ................... 6

    D.   Director Patel Sues For Defamation ................................................................. 9

ARGUMENT.................................................................................................................. 10

I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLAUSIBLY PLEAD ACTUAL MALICE ................................................................. 12

    A.   As A Public Figure, Director Patel Must Plausibly Allege that Defendants Published Each Challenged Statement With Actual Malice...................................................... 12

    B.   The Complaint Fails to Plead Actual Malice as a Matter of Law..................... 14

II.    SEVERAL OF THE CHALLENGED STATEMENTS ARE NOT ACTIONABLE AS A MATTER OF LAW, INDEPENDENTLY REQUIRING DISMISSAL OF THESE CLAIMS.. 28

    A.   Statements In Categories 4 and 5 Are Not Defamatory..................................... 28

    B.   Statements in Category 3 Are True.................................................................... 29

    C.   The Second Statement in Category 3 Is Also Protected by the Fair-Report Privilege ..... 32

CONCLUSION................................................................................................................ 33

ii

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arpaio v. Cottle*,
  2019 WL 11322515 (D.D.C. Dec. 3, 2019)............................................................................20

*Arpaio v. Cottle*,
  404 F. Supp. 3d 80 (D.D.C. 2019)........................................................................................13

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019)................................................................................. *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................10, 13

*Barrett v. Atl. Monthly Grp. LLC*,
  2024 WL 4119400 (D.D.C. Sept. 9, 2024) ...............................................................................6

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)......................................................................................................10, 13

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd,* 807 F.3d 541 (2d Cir. 2015),
  *and aff'd,* 622 F. App'x 67 (2015)...............................................................................19, 20, 22

*Boley v. Atl. Monthly Grp.*,
  950 F. Supp. 2d 249 (D.D.C. 2013).......................................................................................32

*Bongino v. Daily Beast Co., LLC*,
  477 F. Supp. 3d 1310 (S.D. Fla. 2020) ..................................................................................29

*Bose Corp. v. Consumers Union of U.S., Inc.*,
  466 U.S. 485 (1984)...........................................................................................................13

*Brimelow v. New York Times Co.*,
  2021 WL 4901969 (2d Cir. Oct. 21, 2021).................................................................14, 16, 27

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
  2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017)..........................................................................19

*Capitol Intel. Grp., Inc. v. Waldman*,
  352 A.3d 783 (D.C. 2026) ...................................................................................................11

*Carpenter v. King*,
    792 F. Supp. 2d 29 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012)............................29

*Chishti v. Spottiswoode*,
    2026 WL 1955548 (D.C. Cir. July 7, 2026) .............................................................11, 32, 33

*Church of Scientology Int'l v. Daniels*,
    992 F.2d 1329 (4th Cir. 1993) ......................................................................................27

*Clyburn v. News World Commc'n, Inc.*,
    705 F. Supp. 635 (D.D.C. 1989), *aff'd,* 903 F.2d 29 (D.C. Cir. 1990)...................................19

*Coliniatis v. Dimas*,
    965 F. Supp. 511 (S.D.N.Y. 1997) ................................................................................15

*Couch v. Verizon Commc'ns, Inc.*,
    2022 WL 3016755 (D.D.C. July 29, 2022), *aff'd,* 105 F.4th 425 (D.C. Cir. 2024) ...............23

*Counterman v. Colorado*,
    600 U.S. 66 (2023).....................................................................................................12

*Dameron v. Washington Mag., Inc.*,
    779 F.2d 736 (D.C. Cir. 1985).................................................................................32, 33

*Democracy Forward Found. v. White House Off. of Am. Innovation*,
    356 F. Supp. 3d 61 (D.D.C. 2019).................................................................................24

*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017)............................................................................11, 14

*Does 1-9 et al. v. Patel et al.*,
    Case No. 1:25-cv-04258 (D.D.C. filed Dec. 8, 2025) .........................................................25

*Donald J. Trump for President, Inc. v. CNN Broad., Inc.*,
    500 F. Supp. 3d 1349 (N.D. Ga. 2020) ..........................................................................14

*Donald J. Trump for President, Inc. v. WP Co. LLC*,
    2023 WL 1765193 (D.D.C. Feb. 3, 2023) .......................................................................13

*Dragulescu v. Virginia Union Univ.*,
    223 F. Supp. 3d 499 (E.D. Va. 2016) .............................................................................28

*Driscoll v. Patel*,
    No. 1:25-cv-03109 (D.D.C. Sept. 10, 2025)..................................................................24, 31

*Fairbanks v. Roller*,
    314 F. Supp. 3d 85 (D.D.C. 2018)..............................................................................11, 14

iv

*Fairfax v. CBS Corp.*,
  2 F.4th 286 (4th Cir. 2021) ...............................................................................20

*\*Farah v. Esquire Mag.*,
  736 F.3d 528 (D.C. Cir. 2013) ....................................................................3, 11, 24

*Foretich v. Am. Broad. Companies*,
  1997 WL 669644 (D.D.C. Oct. 17, 1997) ..........................................................18

*Garman et al. v. Patel et al.*,
  No. 1:26-cv-01086 (D.D.C. filed Mar. 31, 2026) ...............................................25

*\*Garrison v. State of La.*,
  379 U.S. 64 (1964).........................................................................................1, 13

*Guilford Transp. Indus., Inc. v. Wilner*,
  760 A.2d 580 (D.C. 2000) ...................................................................................29

*Harper v. Walters*,
  822 F. Supp. 817 (D.D.C. 1993*), aff'd,* 40 F.3d 474 (D.C. Cir. 1994) .................22

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989).......................................................................................20, 22

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017).........14

*Jacob v. Lorenz*,
  626 F. Supp. 3d 679 (S.D.N.Y. 2022)..................................................................18

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016)..............................................................................12

*\*Kahl v. Bureau of Nat'l Affs., Inc.*,
  856 F.3d 106 (D.C. Cir. 2017).........................................................................11, 12

*Klayman v. Segal*,
  783 A.2d 607 (D.C. 2001) .............................................................................28, 29

*Lemelson v. Bloomberg L.P.*,
  903 F.3d 19 (1st Cir. 2018)..................................................................................17

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988).......................................................................12, 32

*\*Lohrenz v. Donnelly*,
  223 F. Supp. 2d 25 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003)..................... *passim*

*Martin Marietta Corp. v. Evening Star Newspaper Co.*,
   417 F. Supp. 947 (D.D.C. 1976) ...................................................................................26

*Mason v. Am. Prospect, Inc.*,
   2024 WL 4345855 (D.D.C. Sept. 30, 2024) ...............................................................2, 8, 24

*McFarlane v. Esquire Mag.*,
   74 F.3d 1296 (D.C. Cir. 1996) .....................................................................................17

*\*McFarlane v. Sheridan Square Press, Inc.*,
   91 F.3d 1501 (D.C. Cir. 1996) .....................................................................................26

*McInnes v. S. Poverty L. Ctr., Inc.*,
   811 F. Supp. 3d 1319 (M.D. Ala. 2025) ......................................................................16

*Miami Herald v. Tornillo*,
   418 U.S. 241 (1974) ......................................................................................................22

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .....................................................................................14

*\*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016),
   *aff'd on other grounds*, 875 F.3d 709 (D.C. Cir. 2017) .............................................19

*Myers v. D.C. Hous. Auth.*,
   2021 WL 1167032 (D.D.C. Mar. 26, 2021) .................................................................33

*\*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ..................................................................................................1, 12

*N.Y. Times Co. v. United States*,
   403 U.S. 713 (1971) ........................................................................................................3

*\*Nunes v. WP Co. LLC*,
   513 F. Supp. 3d 1 (D.D.C. 2020), *aff'd,* 2022 WL 997826 (D.C. Cir. Apr. 1, 2022)........13, 21

*Nurriddin v. Bolden*,
   818 F.3d 751 (D.C. Cir. 2016) .....................................................................................10

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
   387 F. Supp. 2d 20 (D.D.C. 2005) .........................................................................17, 26

*Oparaugo v. Watts*,
   884 A.2d 63 (D.C. 2005) ..............................................................................................32

*Parisi v. Sinclair*,
　845 F. Supp. 2d 215 (D.D.C. 2012) ..................................................................................14

*Parsi v. Daioleslam*,
　890 F. Supp. 2d 77 (D.D.C. 2012) ...................................................................................15

*Passantino v. Weissmann*,
　752 F. Supp. 3d 168 (D.D.C. 2024) ................................................................................24

*Patel v. Cable News Network, Inc.*,
　83 Va. App. 387 (2025) .............................................................................................2, 14

*Patel v. Figliuzzi*,
　2026 WL 1097758 (S.D. Tex. Apr. 21, 2026) ..........................................................2, 8, 22

*Patel v. Goldman et al.*,
　No. CL-2019-16270 (Va. Cir. Ct. Fairfax Cnty. filed Nov. 27, 2019) .....................................2

*Patel v. Politico, LLC et al.*,
　No. CL-19-6745 (Va. Cir. Ct. Henrico Cnty. filed Nov. 18, 2019)..........................................2

*Patterson v. McClatchy Co.*,
　2018 WL 11649575 (M.D. Fla. Oct. 16, 2018) ...................................................................21

*Phila. Newspapers, Inc. v. Hepps*,
　475 U.S. 767 (1986).......................................................................................................11

*Pippen v. NBCUniversal Media, LLC*,
　734 F.3d 610 (7th Cir. 2013) .........................................................................................14

*Prince v. Intercept*,
　2023 WL 4492413 (S.D.N.Y. 2023)..............................................................................16, 17

*Rosenblatt v. Baer*,
　383 U.S. 75 (1966).........................................................................................................33

*Schatz v. Republican State Leadership Comm.*,
　669 F.3d 50 (1st Cir. 2012) ...........................................................................................14

*Secord v. Cockburn*,
　747 F. Supp. 779 (D.D.C. 1990)......................................................................................17

*St. Amant v. Thompson*,
　390 U.S. 727 (1968)...................................................................................................13, 23

*Tah v. Glob. Witness Publ'g, Inc.*,
　413 F. Supp. 3d 1 (D.D.C. 2019), *aff'd,* 991 F.3d 231 (D.C. Cir. 2021)......................... *passim*

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ................................................................................13, 23, 28

*Trump v. Dow Jones & Co., Inc.*,
    2026 WL 1453673 (S.D. Fla. May 22, 2026) ........................................................................14

*Tucker v. Fischbein*,
    237 F.3d 275 (3d Cir. 2001)................................................................................................27

**Other Authorities**

Fed. R. Civ. P 12(b)(6)...................................................................................................1, 10

Defendants Atlantic Monthly Group LLC ("*The Atlantic*") and Sarah Fitzpatrick (collectively "Defendants") respectfully submit this brief in support of their motion to dismiss the Complaint (Dkt. No. 10, "Compl.") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### INTRODUCTION

Plaintiff Kashyap Patel ("Plaintiff" or "Director Patel"), the current director of the Federal Bureau of Investigation (FBI), brings this defamation action against *The Atlantic* for publishing an undeniably newsworthy article about his job performance that he finds politically inconvenient. It is an assault, by a man who swore to uphold it, on the core Constitutional value that "debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Garrison v. State of La.*, 379 U.S. 64, 74-75 (1964) (reversing criminal libel conviction over statements criticizing local judges for "inefficiency, laziness, and excessive vacations") (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

This lawsuit is also meritless and should be dismissed. On April 17, 2026, *The Atlantic* published an article reporting on Director Patel's tumultuous tenure at the FBI and concerns raised by those around him about various behaviors, including excessive drinking, frequent absences, mishandling high-profile investigations, purging employees deemed disloyal, and impulsive decision-making (the "Article"). The Article drew on the reporter's interviews with "more than two dozen" sources, including "current and former FBI officials, staff at law-enforcement and intelligence agencies, hospitality-industry workers, members of Congress,

political operatives, lobbyists, and former advisers," and included denials made by Director Patel

and other Trump Administration officials.[1]

This Court should dismiss Director Patel's lawsuit with prejudice because he does not,

and cannot, state a viable defamation claim against *The Atlantic* and its reporter. Director Patel

does not plausibly allege that Defendants published the Article with "actual malice," as required

by the First Amendment. The Complaint's laundry list of conclusory allegations and generic

complaints—including that Defendants did not sufficiently credit Director Patel's denials or tout

his "operational successes," relied on confidential sources, and harbored "editorial animus"—do

not come close to meeting that high constitutional standard, and the Court can and should dismiss

the Complaint in its entirety on this ground alone. Director Patel's claims also fail as to several

of the allegedly defamatory statements for the additional—and independent—reason that the

statements are not actionable as a matter of law, because they are not defamatory, they are

substantially true, and/or they are protected by D.C.'s fair-report privilege.

This is Director Patel's fifth defamation lawsuit against the media in recent years, and

the second one he has filed since being sworn in as FBI Director.[2] None of those prior lawsuits

---

[1] Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 2 ("Article"). Where, as here, a news article "is the source of" the defendant's defamation claim and "extensively quoted from and referred to in the complaint," it is incorporated by reference and properly before the court on a motion to dismiss. *Mason v. Am. Prospect, Inc.*, 2024 WL 4345855, at *4 (D.D.C. Sept. 30, 2024).

[2] *Patel v. Figliuzzi*, 2026 WL 1097758 (S.D. Tex. Apr. 21, 2026) (granting Rule 12(b)(6) motion to dismiss Patel's defamation suit against MSNBC contributor); *Patel v. Cable News Network, Inc.*, 83 Va. App. 387, 397 (2025) (affirming dismissal of Patel's defamation lawsuit against CNN with prejudice); *Patel v. Goldman et al.*, No. CL-2019-16270 (Va. Cir. Ct. Fairfax Cnty. filed Nov. 27, 2019) (seeking $45 million from The New York Times and its reporter for defamation and conspiracy; voluntarily dismissed prior to any court action); *Patel v. Politico, LLC et al.*, No. CL-19-6745 (Va. Cir. Ct. Henrico Cnty. filed Nov. 18, 2019) (seeking $25 million

were successful, and this one is equally meritless.  But merit is not the point.  By filing these suits, Director Patel sends an ominous message to the press: publishing reporting that he does not like comes at a high cost.

These tactics strike at the very foundation of the First Amendment, which was adopted to prevent powerful government officials—like Director Patel—from controlling the public narrative by "punish[ing] the dissemination of material that is embarrassing to the powers-that-be."  *N.Y. Times Co. v. United States*, 403 U.S. 713, 723-24 (1971) (Douglas, J. concurring).  Against that background, this Circuit has long recognized the chilling effect of lawsuits like this one, warning that "if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails."  *Farah v. Esquire Mag.*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming Rule 12(b)(6) dismissal of defamation claim) (citation omitted).  Director Patel's meritless defamation claim should be dismissed with prejudice.

**STATEMENT OF FACTS**

**A.     The Parties**

Plaintiff Kashyap Patel is the ninth Director of the Federal Bureau of Investigation (FBI), having served in that position since February 20, 2025.  Compl. ¶¶ 2, 8.  Defendant The Atlantic Monthly Group LLC is the publisher of *The Atlantic* magazine, which is available in print and via its website, www.theatlantic.com.  *Id.* ¶ 3.  Defendant Sarah Fitzpatrick is a staff writer at *The Atlantic* covering national security and the Department of Justice.  *Id.* ¶ 4.

---

from Politico and its reporters for defamation and conspiracy; voluntarily dismissed prior to any court action).

### B.    The *Atlantic* Article

On April 17, 2026, *The Atlantic* published the Article, which is titled "The FBI Director is MIA," written by Fitzpatrick.  Compl. ¶ 15.  The Article states that Ms. Fitzpatrick interviewed "more than two dozen people" in connection with her reporting, including "current and former FBI officials, staff at law-enforcement and intelligence agencies, hospitality-industry workers, members of Congress, political operatives, lobbyists, and former advisers."  Article at 3.  As the Article notes, these sources spoke on the condition that their names would not be disclosed publicly, in light of the sensitive nature of the conversations and concern that Director Patel "has been aggressive in cracking down on anyone he deems insufficiently loyal," including through the use of polygraph tests.  *Id.* at 6.

The Article begins with an anecdote about Director Patel's reaction to an IT snafu.  When he "struggled to log on to an internal computer system," the Article reports, Director Patel "panicked" and "frantically" called multiple people to report that he had been fired.  Article at 2.  Two sources described Director Patel's behavior as a "freak-out."  *Id.*

Even though it ultimately ended up being a false alarm, the Article describes the IT-lockout episode as "emblematic of Patel's tumultuous tenure as director of the FBI:  He is erratic, suspicious of others, and prone to jumping to conclusions."  *Id.* at 3.  The Article described sources expressing deep concerns about Director Patel's leadership, characterizing his "tenure as a management failure and his personal behavior as a national-security vulnerability."  *Id.*

The Article explains that these concerns "go well beyond what has been previously known, and include both conspicuous inebriation and unexplained absences."  *Id.*  For example:

> Several officials told me that Patel's drinking has been a recurring source of concern across the government. They said that he is known to drink to the point of obvious intoxication, in many cases at the private club Ned's in Washington, D.C.,

4

> while in the presence of White House and other administration staff. He is also known to drink to excess at the Poodle Room, in Las Vegas, where he frequently spends parts of his weekends. Early in his tenure, meetings and briefings had to be rescheduled for later in the day as a result of his alcohol-fueled nights, six current and former officials and others familiar with Patel's schedule told me.
>
> On multiple occasions in the past year, members of his security detail had difficulty waking Patel because he was seemingly intoxicated, according to information supplied to Justice Department and White House officials. A request for "breaching equipment"—normally used by SWAT and hostage-rescue teams to quickly gain entry into buildings—was made last year because Patel had been unreachable behind locked doors, according to multiple people familiar with the request.

*Id.* at 4.  The Article acknowledges that "Patel's drinking is no secret," citing a widely circulated video of Director Patel "chugging beer" with the U.S. men's Olympic hockey team after they won the gold medal at the Milan Games.  *Id.* at 6.  But it reports that sources described Director Patel's alcohol use as going "far beyond the occasional beer," and that "FBI officials and others in the administration" told Ms. Fitzpatrick they had "privately questioned whether alcohol played a role" in high-profile episodes where Patel "shared inaccurate information about active law-enforcement investigations, including following the murder of Charlie Kirk."  *Id.*

The Article also reports that the FBI's operations have suffered because Director Patel is "an irregular presence at FBI headquarters and in field offices" who was "often away or unreachable."  *Id.* at 5.  When present, Director Patel was "fixated" on the FBI's public image, at one point complaining that its merchandise "wasn't intimidating enough."  *Id.* at 7. Nonetheless, the Article reports that Patel "has held on to his job in part because of his commitment to using the federal government to target political or personal adversaries of the president." *Id.* at 6.  In the days before the start of the U.S.-Iran war, Director Patel "fired members of a counterintelligence squad that was devoted, in part, to Iran" because of their prior

5

work investigating allegations against Trump. *Id.* at 7. Sources worried that the firings were "rushed" and would "leave the U.S. shorthanded at a crucial moment." *Id.*

The Article describes Ms. Fitzpatrick's efforts to reach out for comment to the DOJ, FBI, and White House press offices. Comments from Director Patel, the acting Attorney General, and the White House were included in the Article. *Id.* at 3.

### C.      Fitzpatrick's Efforts To Reach Out to Director Patel and the FBI

Prior to publication, Ms. Fitzpatrick made substantial efforts to obtain comment from Director Patel, the FBI and the DOJ. She sent a detailed, 19-point summary of what the Article planned to report to the FBI Office of Public Affairs, the DOJ Office of Public Affairs, and the White House Press Office. For each of those points, she asked that the recipients "let us know whether you have a response and whether there is any additional context or information you can share with us," and invited them to provide "any additional material you wish to share with us to consider as part of our reporting." *See* Compl. ¶¶ 30, 37-39; Bolger Decl. Ex. 3 (correspondence with FBI Office of Public Affairs); *id.* Ex. 4 (correspondence with White House Press Office); *id.* Ex. 5 (correspondence with DOJ Office of Public Affairs).[3] Ms. Fitzpatrick requested a response by 4 p.m., approximately two hours later.

---

[3] The Court may take judicial notice of Defendants' pre-publication email exchanges with the FBI, DOJ, and White House in connection with their requests for comment, as well as the demand letter sent by Plaintiff's counsel prior to the Article's publication. Bolger Decl. Exs. 3-7. These communications are incorporated by reference into the Complaint, which describes them at length (*see id.* ¶¶ 30-39) and relies upon them as a basis for actual malice. *See Barrett v. Atl. Monthly Grp. LLC*, 2024 WL 4119400, at *8 (D.D.C. Sept. 9, 2024) (taking judicial notice of pre-publication correspondence that was "paraphrased" in the complaint and "integral" to the plaintiff's claims).

Ben Williamson, assistant director for the FBI Office of Public Affairs, responded within seven minutes of receiving Ms. Fitzpatrick's email.  He called the reporting "[c]ompletely false at a nearly 100% clip" and said he would follow up with "more thorough responses."  *Id.* Ex. 3.  While Mr. Williamson noted the "two hour deadline," he did not ask for more time or indicate that he would be unable to provide a response within the requested time period.  *Id.*

The White House Press Office did not request additional time and did not respond to any of Ms. Fitzpatrick's 19 points.  Instead, the White House responded at 3:32 p.m. with a general statement attributable to Press Secretary Karoline Leavitt: "Under President Trump and Director Patel's leadership at the FBI, crime across the country has plummeted to the lowest level in more than 100 years and many high profile criminals have been put behind bars.  Director Patel remains a critical player on the Administration's law and order team."  Bolger Decl. Ex. 4.  Ms. Leavitt's comment was included in the Article.  Article at 3.

At 2:59 p.m., Katie Kenlein from the DOJ's Public Affairs Office emailed Ms. Fitzpatrick to advise that she was in the process of responding and to ask if the 4 p.m. deadline was still in place.  *Id.* Ex. 5.  Ms. Fitzpatrick offered to extend the deadline by an additional hour, to 5 p.m.  *Id.*  At 4:42 p.m., Ms. Kenlein thanked Ms. Fitzpatrick for the extension and provided a statement attributable to Acting Attorney General Todd Blanche: "Director Patel has delivered on President Trump's agenda, reducing violent crime, taking on drug cartels and keeping Americans safe.  He has accomplished more in 14 months than the previous administration did in four years.  Anonymously sourced hit pieces do not constitute journalism."  *Id.*  The statement did not address any of Ms. Fitzpatrick's points.  Acting AG Blanche's comment was included in the Article.  Article at 3.

At 3:53 p.m., counsel for Plaintiff sent a demand letter to Defendants. Bolger Decl. Ex. 6 ("Demand Letter"). The Demand Letter asserted that "most of" the 19 points in Ms. Fitzpatrick's request for comment "are false, unsourced, and facially defamatory per se"; called seven of the 19 points (points 5, 7, 8, 9, 11, 14, 19) "categorically false"; and claimed the FBI had "previously publicly rebutted nearly identical claims" that led to "active defamation litigation."[4] *Id.* Ex. 7 at 1-2. The letter asserted that the allegation about breaching equipment "has no corroborating public record whatsoever" and "a simple request to the FBI for relevant documentary evidence would have quickly disproven this claim and many of the others." *Id.* at 2. The letter then touted Director Patel's "operational successes," portraying them as "publicly available official records [that] directly contradict the article's assertions." *Id.* The letter did not request additional time to respond to Ms. Fitzpatrick prior to publication; instead, it closed by threatening to sue *The Atlantic* for defamation if it published the Article. *Id.* at 2-3.

At 4:06 p.m., Williamson sent a follow-up email to Ms. Fitzpatrick, annotating (in red text) each of the 19 points individually with the response "false," and providing on-the-record comment from Director Patel, which was included in the Article: "Print it, all false, I'll see you in court—bring your checkbook." Bolger Decl. Ex. 3.

---

[4] Patel filed suit against Frank Figliuzzi, an MSNBC contributor and former assistant director for counterintelligence at the FBI, for stating that Patel has been "visible at nightclubs far more than he has been on the seventh floor of the Hoover building" during his time as FBI Director. *Figliuzzi*, 2026 WL 1097758, at *1. The court dismissed the complaint on April 21, 2026 for failure to state a claim. *Id.* at *5. The Court may take judicial notice of this court record. *Mason*, 2024 WL 4345855, at *5 ("It is well established that the court may take judicial notice of another court's proceeding" in considering a motion to dismiss.").

### D.    Director Patel Sues For Defamation

Director Patel filed this lawsuit on April 20, 2026, asserting a claim for defamation and defamation per se.  Compl. ¶¶ 51-58.  The Complaint opens with a lengthy recitation of Director Patel's self-described "historic law enforcement results."  Compl. ¶¶ 1, 9.  It then lists 17 allegedly defamatory statements or implications from the Article (*id.* ¶ 18(a)-(q), together the "Allegedly Defamatory Statements"), which fall into five categories: Director Patel's alcohol consumption (Category 1); Director Patel's absences and unreachability (Category 2); Director Patel's retaliatory firings (Category 3); Director Patel's job security concerns (Category 4); and Director Patel's focus on image (Category 5). A chart listing those statements is annexed to the Bolger Declaration as Exhibit 1.[5]  The Complaint alleges that the Statements are "so demonstrably and obviously false, or easily refuted, that it was at best reckless to publish them." Compl. ¶ 19.  It further alleges that Defendants acted with actual malice because they (1) did not credit the FBI's pre-publication denials; (2) asked for comment on a two-hour turnaround; (3) relied on confidential sources; (4) did not interview Director Patel or file public records requests; (5) violated unidentified "internal policies and procedures on journalistic integrity"; (6) "ignored" Director's Patel's "operational successes"; (7) were aware that Director Patel had sued another news outlet; (8) had "editorial animus" toward Director Patel; and (9) published "inherently implausible" allegations.  *Id.* ¶ 55.

Director Patel alleges that the Allegedly Defamatory Statements caused him reputational harm, for which he seeks compensatory, special, and punitive damages "in an amount not less

---

[5] In some instances, the Complaint paraphrases or selectively quotes the text of the Article.  For the purposes of this Motion and the Chart of Plaintiff's Allegedly Defamatory Statements, Defendants reproduce the statements as they are recited in the Complaint.

9

than" $250 million, along with "disgorgement of all income Defendants have earned by virtue of their lies about [him]." *Id.* ¶ 58. Having received comment from each of Director Patel, the DOJ, and the White House—and with no outstanding requests for more time—*The Atlantic* published the Article that evening.

**ARGUMENT**

The very fact that the FBI Director is suing an American news outlet for publishing speech on a matter of public interest is extraordinary—and deeply troubling. But the legal basis for dismissal is straightforward: this Court should dismiss the Complaint because Director Patel fails to plausibly plead the elements of his claim. First, Director Patel has not pled, as he was required to do, that any of the Allegedly Defamatory Statements were published with actual malice. This failure alone requires dismissal. And second—as an independent basis for dismissal—several of the Allegedly Defamatory Statements are not actionable as a matter of law, either because they lack defamatory meaning, are substantially true, or are protected by the fair-report privilege.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court need not accept "legal conclusions couched as factual allegations," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, to state a claim for defamation under D.C. law, Director Patel must plausibly allege each of the following elements: (1) that Defendants made a "false and defamatory" statement

10

about him[6]; (2) that Defendants published that statement without any applicable privilege; (3) that the statement was made with "the requisite culpable mindset"; and (4) that the statement is either defamatory *per se* or caused damages.  *Capitol Intel. Grp., Inc. v. Waldman*, 352 A.3d 783, 794 (D.C. 2026).

This Circuit has long recognized the important role that Rule 12 plays in safeguarding First Amendment rights.  "Early resolution of defamation cases under Federal Rule of Civil Procedure 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) (internal quotations omitted).  Accordingly, "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits."  *Kahl v. Bureau of Nat'l Affs., Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.).  *See also Farah*, 736 F.3d at 534 ("[S]ummary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails.").  Following that guidance, courts in this Circuit routinely dismiss defamation claims under Rule 12(b)(6) where, as here, the complaint fails to plausibly plead one or more of the required elements.[7]  This Court should do the same.

---

[6] As the plaintiff, Director Patel also bears the burden to plead and prove that any statements at issue are false.  *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986).

[7] *See, e.g.*, *Farah*, 736 F.3d at 534 (D.C. Cir. 2013) (affirming Rule 12(b)(6) dismissal where statement was not actionable); *Chishti v. Spottiswoode*, 2026 WL 1955548, at *6-7 (D.C. Cir. July 7, 2026) (affirming 12(b)(6) dismissal based on lack of defamatory meaning and fair-report

11

## I.    THE COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO PLAUSIBLY PLEAD ACTUAL MALICE

First, this Court should dismiss the Complaint in its entirety because Director Patel, an undisputed public official, did not and cannot plausibly allege that Defendants acted with actual malice in publishing the Article.

### A.    As A Public Official, Director Patel Must Plausibly Allege that Defendants Published Each Challenged Statement With Actual Malice

"To encourage and facilitate debate over matters of public concern," public officials like Director Patel who sue for defamation must meet a "high burden" to prevail on a defamation claim (*Kahl*, 856 F.3d at 113): they must be able to show by "clear and convincing evidence" that the publisher acted with "actual malice," i.e., "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1292 (D.C. Cir. 1988) (quoting *Sullivan*, 376 U.S. at 280); *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (affirming *Sullivan*).

The actual malice standard is "famously daunting," and for good reason: it "reflects the cornerstone First Amendment principle that speech relating to public officials and public figures, as distinct from private persons, enjoys greater protection." *Tah*, 991 F.3d at 240. "[I]t is not enough to show that [a] defendant should have known better; instead, the plaintiff must offer evidence that the defendant *in fact* harbored subjective doubt" about the allegedly defamatory statements. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016) (emphasis added).

---

privilege); *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 241-43 (D.C. Cir. 2021) (affirming Rule 12(b)(6) dismissal for failure to allege actual malice); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 144 (D.D.C. 2017) (granting motion to dismiss for failure to allege actual malice); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 90 (D.D.C. 2019) (granting motion to dismiss based on failure to allege actual malice and substantial truth). *See also infra* at 13-14.

In other words, the defendant must have actually "entertained serious doubts as to the truth of his [statement]," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a "high degree of awareness of [its] probable falsity[,]" *Garrison*, 379 U.S. at 74. It is a subjective inquiry that focuses solely on the defendant's state of mind "at the time of publication," *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512 (1984), and any "serious doubt" or actual knowledge of falsity must be specific to the statement at issue. *See Tavoulareas v. Piro*, 817 F.2d 762, 793-94 (D.C. Cir. 1987) ("defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.") (emphasis in original).

To plausibly plead actual malice under *Iqbal* and *Twombly*, then, the Complaint "must allege facts that, if proven, provide clear and convincing evidence that would permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Tah v. Glob. Witness Publ'g, Inc.*, 413 F. Supp. 3d 1, 12 (D.D.C. 2019), *aff'd,* 991 F.3d 231 (internal quotations omitted). "Generic statement[s] accusing someone of acting with reckless disregard" are not sufficient, *Tah*, 991 F.3d at 241, nor are "[t]hreadbare recital[s] of the definition of actual malice." *Arpaio*, 414 F. Supp. 3d at 91 (citation omitted).

Failure to plausibly plead actual malice is "fatal" to a public official or public figure's defamation claim—and courts in this Circuit routinely dismiss defamation claims on this basis. *Tah*, 991 F.3d at 243 (affirming dismissal of defamation claim for failure to plead actual malice); *see also, e.g.*, *Donald J. Trump for President, Inc. v. WP Co. LLC*, 2023 WL 1765193, at *4 (D.D.C. Feb. 3, 2023) (dismissing defamation claim under Rule 12(b)(6) for failure to plead actual malice); *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 9 (D.D.C. 2020) (same), *aff'd,* 2022 WL 997826 (D.C. Cir. Apr. 1, 2022); *Arpaio*, 414 F. Supp. 3d at 91; (same); *Arpaio v. Cottle*,

13

404 F. Supp. 3d 80, 86 (D.D.C. 2019) (same); *Deripaska*, 282 F. Supp. 3d at 144 (same); *Fairbanks*, 314 F. Supp. 3d at 92 (same); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) (same), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (same).[8]

### B.     The Complaint Fails to Plead Actual Malice as a Matter of Law

The Complaint does not come close to satisfying this demanding constitutional standard. It does not allege *a single fact* showing that any statement in the Article is false, much less that Defendants had "serious doubts" or "actual knowledge of falsity" for any of these statements. This is not surprising.  The Article was well-sourced and thoroughly researched: Ms. Fitzpatrick spoke to more than two dozen sources, including current and former FBI officials, staff at law enforcement and intelligence agencies, and members of Congress.  Article at 3.  Each of the Article's key findings was sourced to multiple people.  For example, *six* sources confirmed that meetings and briefings had to be rescheduled for later in the day because of Director Patel's alcohol-fueled nights, while *nine* sources confirmed that Director Patel panicked because a computer malfunction led him to believe he had been fired.  *Id.* at 2, 4.  Ms. Fitzpatrick also relied on publicly available information that is not subject to dispute, including Director Patel's

---

[8] The same is true across the country.  *See, e.g.*, *Trump v. Dow Jones & Co., Inc.*, 2026 WL 1453673, at *6-8 (S.D. Fla. May 22, 2026); *Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 500 F. Supp. 3d 1349, 1357-58 (N.D. Ga. 2020); *Brimelow v. New York Times Co.*, 2021 WL 4901969, at *1 (2d Cir. Oct. 21, 2021) (affirming 12(b)(6) dismissal for failure to plead actual malice); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 707 (11th Cir. 2016) (same); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013) (same); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-58 (1st Cir. 2012) (same).  Indeed, Director Patel's recent defamation claim against CNN (in which he was represented by the same counsel) was dismissed for this very reason. *Patel*, 83 Va. App. at 420 (affirming dismissal for failure to sufficiently plead actual malice).

own testimony before Congress, his own book, and his own actions at the Milan Olympics. *Id.* at 4, 6-7. In the face of this, all the Complaint offers is the typical grab-bag of conclusory actual malice allegations that courts routinely reject on a motion to dismiss. Compl. ¶ 55. None of these theories—separately or together—is legally sufficient to plead that Defendants published the Article with actual malice.

*First*, Director Patel cannot create an inference of actual malice by pointing to the broad, perfunctory, and occasionally rude denials that his agency spokesperson and his personal counsel sent to Defendants prior to publication.[9] Compl. ¶ 55 (1). It is well settled that "publishers need not accept denials, however vehement," since "such denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Tah*, 991 F.3d at 242 (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003)). "[A] decision to print a story in the face of such a denial, particularly where, as here, it comes from an interested protagonist, does not establish clear and convincing evidence of malice." *Coliniatis v. Dimas*, 965 F. Supp. 511, 519 (S.D.N.Y. 1997). *See also Lohrenz*, 350 F.3d at 1285 (no actual malice where reporter was "warned" by various U.S. Navy officials that the conclusions she intended to report were "wrong" and based on biased sources); *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 89 (D.D.C. 2012) ("[P]rotests from the subject of an article do not prove actual malice."). "To hold otherwise would empower public figures to silence opposing speech, not based on the veracity of the speech in the mind of the speaker

---

[9] While the Complaint alleges that Defendants received "on-the-record denials" from the White House and the Department of Justice as well, Compl. ¶ 45, the actual correspondence—which is incorporated by reference, *supra* n.3, is to the contrary. Neither entity responded to any of Ms. Fitzpatrick's nineteen numbered points for comment; instead, they each provided a generic statement expressing support for Director Patel and the Trump Administration.

but based solely on the subject's denial of its veracity." *McInnes v. S. Poverty L. Ctr., Inc.*, 811 F. Supp. 3d 1319, 1333 (M.D. Ala. 2025).  Courts therefore routinely grant motions to dismiss when plaintiffs rely on their denials to support actual malice.  *See, e.g.*, *Tah*, 991 F.3d at 242 (affirming Rule 12(b)(6) dismissal, noting there is "no support in our First Amendment case law" for plaintiffs to "draw an inference of actual malice from [defendants'] failure to credit their denials"); *Brimelow*, 2021 WL 4901969, at *3 (plaintiff's denial did not plausibly plead actual malice); *Prince v. Intercept*, 2023 WL 4492413, at *1, 11 (S.D.N.Y. 2023) (same).

This case exemplifies the reason for the rule.  Director Patel is a powerful public official who is and should be the subject of public discussion—positive and negative.  Requiring Defendants to credit his denials over their own, subjective belief in the truth of what they were reporting would give Director Patel a veritable veto power over their reporting.  His denials alone, therefore, do not create an inference that Defendants *knew* any statements in the Article were false.

Neither do the denials from Director Patel's staff.  Mr. Williamson, who works for Director Patel, responded to Ms. Fitzpatrick's 19-point email by simply stating that each point was false, without offering any "evidence that could be readily verified … that would provide obvious reasons to doubt the veracity" of Defendants' reporting.  *Tah*, 991 F.3d at 242.  *See* Bolger Decl. Ex. 3 at 2-3.  And the White House and DOJ did not provide any response to Ms. Fitzpatrick's reporting either.  Instead, they only provided statements about Director Patel's purported success as FBI director.  Contrary to Director Patel's allegation, Compl. ¶ 55(1), these denials do not demonstrate actual malice as a matter of law.

Nor does Director Patel's pre-publication Demand Letter.  *See id.*  The letter called seven of the 19 points in Ms. Fitzpatrick's email "categorically false" but offered no support

16

whatsoever for that assertion.[10]  Bolger Decl. Ex. 7 at 1.  The letter also pointed to a separate

(and now dismissed) "active defamation litigation" against a different news outlet for an on-air

comment, but did not explain how that lawsuit would show that any of Defendants' reporting

was false.  *Id.* at 2; *see infra* at 22.

In sum, none of the pre-publication denials provides a plausible basis to allege actual

malice.  More than that, reporting a plaintiff's denials "weighs against, rather than for, a finding

of actual malice."  *Lohrenz*, 350 F.3d at 1286.  *See also McFarlane v. Esquire Mag.*, 74 F.3d

1296, 1304 (D.C. Cir. 1996) (including plaintiff's denials "tends[] to rebut a claim of malice, not

to establish one"); *Tah*, 413 F. Supp. 3d at 14 (no actual malice where the challenged publication

"included excerpts from Plaintiffs' denials"); *Lemelson v. Bloomberg L.P.*, 903 F.3d 19, 24 (1st

Cir. 2018) (incorporating plaintiff's denials "undercut[s] any inference of actual malice").

And here, Director Patel's denials, those of the FBI, and the statements from the DOJ and the

White House are all prominently reported in the Article.  The careful inclusion of Director Patel's

denials, therefore, undercuts any claim that Defendants acted with actual malice.

*Second*, Director Patel cannot conjure actual malice from the fact that Defendants

requested comment on a two-hour turnaround.  It is well established that publishers are not

required to contact the subject of a story for comment at all, and failure to seek pre-publication

comment does not demonstrate actual malice.  *See Secord v. Cockburn*, 747 F. Supp. 779, 789

(D.D.C. 1990) ("plaintiff cannot rely on the defendant's failure to consult with him prior to the

publication … as evidence of actual malice"); *OAO Alfa Bank v. Ctr. for Pub. Integrity*, 387 F.

---

[10] The seven points that the Demand Letter labeled "categorically false" relate to statements in
Categories 1 and 2. (Compl. ¶¶18(a), (b), (d), (e), (f), (g) and (n)). Notably, Plaintiff left
unchallenged the statements in Categories 3-5.

Supp. 2d 20, 54-55 (D.D.C. 2005) (decision not to contact subjects of investigative report prior to publication "does not amount to actual malice"). There is, therefore, no particular amount of time a news publisher must provide a reporting subject for comment, and requesting comment close to a publication deadline cannot indicate actual malice. *See Jacob v. Lorenz*, 626 F. Supp. 3d 679, 693 (S.D.N.Y. 2022) (granting motion to dismiss for lack of actual malice where reporter sought comment from plaintiff "only shortly before publication"); *Foretich v. Am. Broad. Companies*, 1997 WL 669644, at \*7 (D.D.C. Oct. 17, 1997) ("failure to engage in dialogue with the allegedly defamed party" before publication "does not support … an inference of actual malice").

In any event, in this case, all of the government agencies Ms. Fitzpatrick contacted—the White House, FBI, and DOJ—had all the time they needed. Each responded to the request for comment, and their on-the-record statements were incorporated into the Article. Only Ms. Kenlein at DOJ sought additional time to respond—and Defendants gave it to her.[11] The time frame for providing comment does not amount to actual malice.

*Third*, Director Patel attempts to allege actual malice by claiming that the Article relies on "anonymous sources." Compl.¶ 55 (3). But as is clear from the Article's text, Defendants did not rely on *anonymous* sources. Rather, the Article relied on *unnamed* sources, including sources described as "FBI official[s]," "current and former officials," "former officials who have stayed close to [Patel]," and "people familiar" with the events in question. *See* Article at 2, 4, 5.

---

[11] Plaintiff frames Ms. Fitzpatrick's request for comment as a "pretextual" exercise to "manufacture a 'no comment' or a summary denial" and "publish before the truth could catch up with them," Compl. ¶ 31, But "seeking comment in advance of publication is a standard journalistic practice" and "[d]rawing a pernicious inference from adherence to such professional standards would turn First Amendment case law on its head." *Tah,* 991 F.3d at 241.

A source known to the publisher but not identified by name in the publication is not the same as an "anonymous" source—*i.e.*, one whose identity is unknown to the publisher.  And relying on such a source is not evidence of actual malice.  *See Biro v. Conde Nast*, 963 F. Supp. 2d 255, 286 (S.D.N.Y. 2013) (that source is not quoted by name in article "does not make the source 'anonymous'" and has no bearing on "whether a jury could infer that [the journalist] must have had 'serious doubts about'" the value of the source's information), *aff'd,* 807 F.3d 541 (2d Cir. 2015), *and aff'd,* 622 F. App'x 67 (2015); *Cabello-Rondon v. Dow Jones & Co., Inc.*, 2017 WL 3531551, at *9 (S.D.N.Y. Aug. 16, 2017) ("[F]ailing to name a source is not itself evidence of the source's unreliability."); *Clyburn v. News World Commc'n, Inc.,* 705 F. Supp. 635, 641-42 (D.D.C. 1989) (defendants' "reliance on … confidential sources, who, in turn, relied on informants, does not indicate actual malice"), *aff'd,* 903 F.2d 29 (D.C. Cir. 1990).  Rather, the Article explains that *The Atlantic* did not name its sources because Director Patel has been "aggressive in cracking down on anyone he deems insufficiently loyal" and compelling FBI employees identified as potential "leakers" to take polygraph tests.  Article at 6.  Tellingly, the Complaint does not challenge this reporting.

Director Patel's related allegation that unspecified sources were "animated by hostility" or had "motives to fabricate" are equally conclusory and carry no weight in pleading actual malice.  Compl. ¶¶ 44-45, 55.  Even if that assertion were true (and the Complaint offers no facts to support it), "the mere possibility" that sources "may be biased in some way or hold a subjective view point does not, without more, create obvious reasons to doubt a source's accuracy or establish actual malice." *Montgomery v. Risen*, 197 F. Supp. 3d 219, 263 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 709 (D.C. Cir. 2017); *see also Lohrenz*, 350 F.3d at 1284 (reliance on "biased source[s] and incomplete information" cannot establish actual malice).  Director Patel

19

alleges that "former advisors" and "political operatives" are "categories of sources with obvious axes to grind," Compl. ¶ 44, but "self-interest and politics motivate many news sources." *Fairfax v. CBS Corp.*, 2 F.4th 286, 294 (4th Cir. 2021) (affirming dismissal of defamation claims due to failure to plead actual malice) (citation omitted). "[I]f dealing with such persons were to constitute evidence of actual malice on the part of a reporter, much newsgathering would be severely chilled." *Id.*

*Fourth*, Director Patel alleges that Defendants "failed to take even the most basic investigative steps." Compl. ¶ 55 (4). But "[a] failure to investigate will not alone support the required degree of recklessness, nor will an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Arpaio v. Cottle*, 2019 WL 11322515, at *1 (D.D.C. Dec. 3, 2019) (granting 12(b)(6) motion to dismiss for failure to establish actual malice) (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989)). And in any event, this conclusory allegation ignores the reality that the Article relied on more than two dozen sources, including current and former FBI officials, cited multiple sources for its key findings, and referenced publicly available information, including Director Patel's own testimony before Congress.

In addition, the investigation Director Patel claims Defendants should have undertaken— obtaining FBI documents, "FBI security-detail protocols," documentation of his security team's request for breaching equipment, credit card records from his visits to the exclusive private clubs where he is a member, and an interview Director Patel himself—is all within his control.[12] *See*

---

[12] The Complaint also alleges that Defendants did not "engage with publicly available counter-evidence" that was "directly provided to them." Compl. ¶ 28. No such "counter-evidence" is identified in the Complaint, and none of the pre-publication correspondence "provided" any

Compl. ¶¶ 41, 42. But the actual malice standard does not require Defendants to "withhold publication merely because they have not consulted particular documents, the procuring of which would effectively render the story's publication reliant on the subject's consent." *Lohrenz*, 350 F.3d at 1286 (noting that reporters "were not required to remain silent until the day [plaintiff] agreed to disclose" certain records within her control to them). *See also Patterson v. McClatchy Co.*, 2018 WL 11649575, at \*3 (M.D. Fla. Oct. 16, 2018) ("Defendants' failure to follow Plaintiff's preferred method of investigation … does not amount to actual malice."). Any other rule would grant public officials veto power over critical reporting based on their control of relevant documents, which would be anathema to the First Amendment.

*Fifth*, Director Patel alleges that Defendants violated "internal policies and procedures on journalistic integrity." Comp. ¶ 55 (5). This baseless allegation fails for two reasons. One, it is entirely conclusory. *See Nunes*, 513 F. Supp. 3d at 8 (allegation that defendants "abandoned all journalistic standards and integrity" could not support actual malice where plaintiff "nowhere identifie[d]" any such standards that defendant "purportedly violated"). And two, it is irrelevant to the legal standard of actual malice—which looks only to *subjective knowledge of falsity*, not adherence to industry practice or any other "objective standard of reasonableness." *Tah*, 991 F.3d at 240. Indeed, the Supreme Court has recognized that even "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily

"evidence." To the extent this "counter-evidence" refers to the list of Director Patel's "operational successes" in his Demand Letter, Bolger Decl. Ex. 7 at 2, that has no bearing on any Challenged Statement and is irrelevant to actual malice. "[T]he fact that an article is one sided or fails to include as many positive features about the subject as negative ones has no tendency to prove that the publisher believed it to be false." *Biro*, 963 F. Supp. 2d at 285 (internal quotation omitted).

21

adhered to by responsible publishers" does not demonstrate actual malice. *Harte-Hanks*, 491

U.S. at 666. Director Patel's invocation of unspecified principles of "journalistic integrity" has

no bearing on actual malice.

*Sixth*, Director Patel attempts to plead actual malice by alleging that Defendants

"ignored" his "operational successes." Compl. ¶ 55 (6). But "[t]he choice of material to go into

a newspaper, and the decisions made as to limitations on the size and content of the paper, and

treatment of public issues and public officials—whether fair or unfair—constitute the exercise

of editorial control and judgment." *Miami Herald v. Tornillo*, 418 U.S. 241, 258 (1974). Thus,

"omission of certain facts in itself does not constitute evidence of actual malice, absent a

demonstration that the defendant knew or believed the omission rendered the remaining report

false." *Harper v. Walters*, 822 F. Supp. 817, 829 (D.D.C. 1993*), aff'd,* 40 F.3d 474 (D.C. Cir.

1994). Director Patel may have preferred more obsequious coverage, but Defendants' exercise

of editorial discretion does not amount to actual malice.

*Seventh*, Director Patel attempts to plead actual malice by pointing to *another* libel suit

(now dismissed) he filed against a news commentator for quipping that Director Patel was more

visible at nightclubs than at FBI headquarters. Compl. ¶¶ 20, 55 (7). *Supra* n.4; *Figliuzzi*, 2026

WL 1097758, at *1. Allegations made against a different news organization based on different

reporting have no bearing on Defendants' belief in the accuracy of their own reporting. *See Biro*,

963 F. Supp. 2d at 283 ("Like other forms of denials, defamation lawsuits are 'so commonplace'

that 'in themselves, they hardly alert the conscientious reporter to the likelihood of error.'").

Plaintiff cannot manufacture actual malice from his own predilection for suing the media.

*Eighth*, Director Patel's claim that Defendants harbored "editorial animus" toward him,

Compl. ¶ 55(8), misconstrues both the meaning of the term "actual malice" and the First

22

Amendment principles it encodes.  Actual malice does not mean "ill will" or "bad motives," *Tavoulareas*, 817 F.2d at 795, and allegations of a "pre-existing agenda" against a plaintiff are "not indicative of actual malice," *Lohrenz v. Donnelly*, 223 F. Supp. 2d 25, 48 (D.D.C. 2002), *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  Nor can actual malice be inferred from a media defendant taking an "adversarial stance" in its "professional, investigative reporting," *Arpaio*, 414 F. Supp. 3d at 92; "[a]fter all, virtually any work of investigative journalism begins with some measure of suspicion." *Tah*, 991 F.3d at 241.  To credit such a "breathtaking" theory would "infer[ ] ... actual malice in a wide swath of investigative journalism that turns out to be critical of its subject." *Id.* at 243.  *See Couch v. Verizon Commc'ns, Inc.*, 2022 WL 3016755, at \*4 (D.D.C. July 29, 2022) ("[W]hat [Plaintiff] thinks of [Defendant's] journalism or his purported animosity towards [Plaintiff], without more, is ultimately irrelevant to pleading actual malice."), *aff'd,* 105 F.4th 425 (D.C. Cir. 2024).  Therefore, even if Director Patel's unsupported claims of bias were true (they are not), they have no bearing on actual malice.

*Ninth*, Director Patel attempts to claim that Defendants published the Allegedly Defamatory Statements with actual malice because they are "inherently implausible." Compl. ¶ 55(9).  While actual malice may be inferred where statements are "so inherently improbable that only a reckless [publisher] would have put them in circulation," *St. Amant*, 390 U.S. at 732, that is not remotely the case here.  The Article itself shows that the Allegedly Defamatory Statements are *not* implausible, but rather inherently *plausible*.  For example, it states that Director Patel's "drinking is no secret," Article at 6, citing the widely publicized video of him chugging a beer with the U.S. men's Olympic hockey team (Category 1); that he faced public criticism for his frequent use of the FBI jet for personal travel (Category 2); that he testified before Congress about firing FBI agents who investigated President Trump's handling of classified documents

23

and published a list of government officials he viewed as corrupt or disloyal in his 2023 book, *Government Gangsters* (Category 3); that *The Atlantic* previously reported he was among the officials expected to be fired after Attorney General Pam Bondi's dismissal (Category 4); and that he has "publicly proclaimed that the FBI needs to demonstrate that it is 'fierce'" (Category 5). *Id.* at 2-7. The Complaint does not challenge any of these statements.

But that's not all. Defendants published the Article against a backdrop of a voluminous public record—whose existence and content the Court can take judicial notice of on this motion, even without considering it for the truth of the matter[13]—that further underscores that the Allegedly Defamatory Statements are not remotely "improbable." Multiple Congressional inquiries into Director Patel's actions, extensive reporting by major news outlets, Director Patel's public testimony and disclosures, and publicly filed lawsuits by former FBI employees have detailed concerns that are consistent with the Article. These include Director Patel's penchant for alcohol and nightlife[14] (Category 1), his frequent unreachability and use of FBI resources for

---

[13] "The Court may take judicial notice of congressional hearings and legislative materials." *Passantino v. Weissmann*, 752 F. Supp. 3d 168, 174 n.3 (D.D.C. 2024). The Court may also take judicial notice of official statements and press releases issued by members of Congress because they are "government document[s] available from a reliable source." *See Democracy Forward Found. v. White House Off. of Am. Innovation*, 356 F. Supp. 3d 61, 68 n.4 (D.D.C. 2019) (taking judicial notice of White House press release). Finally, the Court may take judicial notice of news articles (including those cited in nn.14-18) for the "existence or nature of the articles," even if not for the truth of the matter asserted. *Mason*, 2024 WL 4345855, at *5 (collecting cases). *See also Farah*, 736 F.3d at 534 ("Judicial notice is properly taken of publicly available historical articles such as were attached to [defendant's] motions to dismiss.").

[14] *See, e.g.*, Questions for the Record, Patel Nomination, Sen. Judiciary Cmte. (Jan. 30, 2025), https://perma.cc/WR4G-G2Z9, at 10-11 (disclosing Patel's membership at the Poodle Room, a private Las Vegas club with a $10,000 fee); *Driscoll v. Patel*, No. 1:25-cv-03109, Dkt. 1, ¶ 141 (D.D.C. Sept. 10, 2025) (describing "collection of whiskey bottles and cigars on Patel's desk" at FBI headquarters); "FBI's Patel Defends Beer-Soaked Olympic Celebration While on Italy Trip," REUTERS (Feb. 23, 2026), https://www.reuters.com/world/fbis-patel-defends-beer-

24

personal travel[15] (Category 2), his firing of FBI officials who worked on matters adverse to

President Trump[16] (Category 3), speculation that he would be removed from his position[17]

---

soaked-olympic-celebration-while-italy-trip-2026-02-23/.

[15] *See, e.g.*, Letter from Reps. Jamie Raskin and Sydney Kamlager-Dove to FBI Director Patel (Dec. 1, 2025), https://perma.cc/DE8A-N2GV at 1, 3 (detailing whistleblower concerns about Director Patel's use of government resources for social excursions—including "an overnight date with your girlfriend, a Scottish golfing excursion with your buddies, and a trip to a luxury hunting retreat called 'Boondoggle Ranch'"); Letter from Sen. Richard J. Durbin to Orice Williams Brown and Don R. Berthiaume (Feb. 24, 2026), https://perma.cc/S296-RH6N at 1-2 (stating that "Kash Patel has seemingly engaged in what amounts to irresponsible joyriding on DOJ and FBI-operated aircraft at the expense of the American taxpayer and to the detriment of ongoing Bureau operations" and disclosing whistleblower reports that Patel's use of FBI jet for personal engagements hampered official response to Charlie Kirk and Brown University shootings); Ken Dilanian, "Kash Patel's new way of leading the FBI: Fewer morning intel briefings, more pro sports events," NBC NEWS (May 9, 2025), https://perma.cc/JL5C-7YJ8 (reporting that the schedule for Director Patel's morning briefings was altered "because Patel sometimes failed to arrive on time" and that "[a]t the same time, Patel has drawn attention for regularly appearing with celebrities at professional sporting events around the country").

[16] *See, e.g.*, Statement of Rep. Jamie Raskin, Hearing Before the Judiciary Cmte. (Sept. 17, 2025), https://perma.cc/2EQG-8A3G at 5 (stating that Patel was "running the FBI . . . as a political enforcement agency working directly for the President's vengeance campaign."); Letter from Sen. Richard J. Durbin to Hon. Michael E. Horowitz (Feb. 11, 2025), https://perma.cc/CB98-Z47B at 1 (describing "highly credible information from multiple sources that Kash Patel has been personally directing the ongoing purge of career civil servants at the Federal Bureau of Investigation"); Breanne Deppisch, David Spurnt, et al., "FBI Ousts Former Acting Director, Agent Involved in J6 Prosecutions, With More Expected," FOX NEWS (Aug. 7, 2025), https://www.foxnews.com/politics/fbi-ousts-former-acting-director-agent-involved-j6-prosecutions-more-expected (quoting an "individual with knowledge of the removals" who described them as "retribution"); Emily Bazelon and Rachel Poser, *A Year Inside Kash Patel's FBI*, N.Y. TIMES (Jan. 22, 2026), https://www.nytimes.com/interactive/2026/01/22/magazine/trump-kash-patel-fbi-agents.html (reporting that "Patel has fired agents who worked on the Trump investigations and radically changed the bureau's mission."). *See also Garman et al. v. Patel et al.*, No. 1:26-cv-01086, Dkt. 1 ¶¶ 1-2 (D.D.C. filed Mar. 31, 2026) (class action by terminated FBI agents alleging "a public campaign to oust [them] from federal service because [Patel and others] perceived them to be political opponents"); *Does 1-9 et al. v. Patel et al.*, Case No. 1:25-cv-04258, Dkt. 1 ¶ 13 (D.D.C. filed Dec. 8, 2025) (lawsuit by terminated FBI agents alleging unlawful retaliation and "weaponiz[ation of] government for political reasons" by Director Patel).

[17] *See, e.g.*, Jacquie Heinrich, "Knives Are Out For Embattled FBI Director Kash Patel, Despite Trump Support," FOX NEWS (Sept. 14, 2025), https://www.foxnews.com/politics/knives-out-

(Category 4), and his focus on his public image[18] (Category 5).

Courts in this Circuit recognize that a reported fact is not "inherently improbable" where Congress or other arms of the government take action to investigate it. For example, in *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501 (D.C. Cir. 1996), the D.C. Circuit explained that allegations about the plaintiff in a published book were not "inherently improbable" where, at the time of publication, "the Senate Foreign Relations Committee was taking [the] allegation … seriously enough to hold hearings on the matter, and the House of Representatives commissioned [a] Task Force specifically to investigate [the] story." *Id.* at 1512-13. In *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947 (D.D.C. 1976), the court held that a newspaper article about a raucous "stag party" featuring prostitutes that was hosted by the plaintiff defense contractor and attended by Defense Department personnel was not inherently improbable, noting prior reporting and "similar allegations" that led to investigations by Congress and the Department of Defense. *Id.* at 950-51. *See also, e.g., OAO Alfa Bank*, 387 F. Supp. 2d at 50 (claim that Russian bank had ties to organized crime was not inherently improbable where it was "widely reported" that organized crime had "infiltrated

---

embattled-fbi-director-kash-patel-despite-trump-support (reporting that Patel's "leadership atop the nation's premier law enforcement agency is under fire, according to 10 sources from multiple federal offices granted anonymity to speak freely").

[18] Miranda Devine, "Damning report labels FBI 'rudderless ship' under Kash Patel—with him and Dan Bongino more concerned with building 'personal résumés'," NEW YORK POST (Nov. 30, 2025), https://nypost.com/2025/11/30/opinion/damning-report-labels-fbi-rudderless-ship-under-kash-patel-with-he-and-dan-bongino-more-concerned-with-building-personal-resumes/ (discussing 115-page report directed to House and Senate Judiciary Committees, which described Director Patel as "obsess[ed] with social media" and detailed incident where he refused to disembark from FBI jet during Charlie Kirk investigation until officers located an appropriately-sized raid jacket and Velcro patches for him to wear).

the Russian marketplace" and FBI Director had given testimony to that effect); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1334 (4th Cir. 1993) (it would be "impossible to conclude that [defendant] entertained serious doubts as to the truth of his statement or spoke with a high degree of probable falsity" given the "volume of published commentary" that aligned with challenged statements). Here, too, the Article was not "inherently improbable," because Congress is investigating Director Patel for the very same behaviors reported in the Article.

*Finally*, Director Patel cannot add these failed allegations of actual malice together to create a viable pleading. In *Brimelow*, the plaintiff claimed the *New York Times* published an article with actual malice based on a litany of similar factors, including that it ignored the plaintiff's "repeated and persistent denials," departed from accepted newsgathering standards, acted with ill-will, and failed to act impartially, 2021 WL 4901969, at *2-3. The court concluded there was "no combination of allegations from which one could plausibly infer that the Times was purposely avoiding the truth in its reporting." *Id.* at *3. *See also Tah*, 991 F.3d at 241 (rejecting plaintiff's "several interlocking theories" of actual malice because none sufficed to state a claim); *Tucker v. Fischbein*, 237 F.3d 275, 286 (3d Cir. 2001) (Alito, J.) (plaintiff's 24 theories of actual malice, including that defendant engaged in "poor journalistic practices," had "a preconceived story-line," "did not follow … editorial guidelines[,]" and "failed to conduct a thorough investigation[]" were not sufficient as a matter of law).

So too here. Taken alone or together, Director Patel's allegations fail to plead facts that could establish, by clear and convincing evidence, that *The Atlantic* published the Article knowing it to be false or with a high degree of awareness of its probable falsity. The Complaint should, accordingly, be dismissed.

**II.    SEVERAL OF THE ALLEGEDLY DEFAMATORY STATEMENTS ARE NOT ACTIONABLE AS A MATTER OF LAW, INDEPENDENTLY REQUIRING DISMISSAL OF THESE CLAIMS**

While the failure to plead actual malice is fatal to the entire Complaint, several of the Allegedly Defamatory Statements are also not actionable on independent grounds: because they are not defamatory, they are substantially true, and/or they are protected by the fair-report privilege under D.C. law.

**A.    Statements In Categories 4 and 5 Are Not Defamatory**

*First*, the statements in Category 4 and 5 are not defamatory as a matter of law. "In a libel case, it is the role of the court to determine whether the challenged statement is capable of bearing a particular meaning and whether 'that meaning is defamatory." *Tavoulareas*, 817 F.2d at 779 (citation omitted). To be defamatory, the statement "must be more than unpleasant or offensive; the language must make the plaintiffs appear odious, infamous, or ridiculous." *Klayman v. Segal*, 783 A.2d 607, 613 (D.C. 2001) (citation omitted).

As to Category 4, Plaintiff alleges that the Article defamed him by reporting that he "freaked out" and believed he was fired when he was unable to log into his government device. Compl. ¶ 23. The Complaint concedes that Director Patel was, in fact, locked out of his internal computer system for some period of time on April 10. Compl. ¶ 23. Describing his response to that undisputed fact as a "freak out" does not rise to the level of actionable defamation. *See Dragulescu v. Virginia Union Univ.*, 223 F. Supp. 3d 499, 510 (E.D. Va. 2016) (statements that plaintiff had a "meltdown" or "temper tantrum" were not actionable as a matter of law). Someone who panics when they think they have lost their job is not "odious, infamous, or ridiculous"—to the contrary, that would be a normal (even expected) reaction. Even stating that someone was *actually* fired (which the Article does not do) "is not in and of itself defamatory."

28

*Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1318 (S.D. Fla. 2020) (citation omitted). Category 4 is not defamatory.

The statement in Category 5—that Director Patel "expressed frustration with the look of FBI merchandise, complaining that it isn't intimidating enough" (Article at 7)—is not defamatory either. Expressing opinions about the image portrayed by his agency does not make Director Patel appear "odious, infamous, or ridiculous." *Klayman*, 783 A.2d at 613. To the extent this portion of the Article portrays Director Patel as overly image-focused, it is "the quintessential kind of commentary—provocative, perhaps, but hardly libelous—which is entitled to protection under the First Amendment." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 602 (D.C. 2000) (statement that plaintiff "lack[ed] seriousness" not actionable). It is also consistent with the unchallenged fact that Director Patel wants FBI merchandise to be "fierce." Article at 7.

Because the statements in Categories 4 and 5 are not defamatory as a matter of law, Director Patel's claims based on these statements should be dismissed.

### B.      Statements in Category 3 Are True

*Second*, the statements in Category 3, which relate to Director Patel's retaliatory firings, fail as a matter of law because they are substantially true.

In a defamation action, "[t]he burden of proving falsity rests squarely on the plaintiff." *Carpenter v. King*, 792 F. Supp. 2d 29, 34 (D.D.C. 2011), *aff'd*, 473 F. App'x 4 (D.C. Cir. 2012). Accordingly, "[i]t is an absolute defense to a defamation claim if the statements are substantially true." *Id.* (citation omitted); *see Arpaio*, 414 F. Supp. 3d at 90 ("For purposes of defamation law, a communication can be 'true' even if it is only substantially true (i.e., not literally true).").

"Substantial truth" means that the "gist of the statement is true, or that the statement is substantially true, as it would be understood by its intended audience." *Id.*

Here, Director Patel's termination of FBI personnel who worked on investigations adverse to President Trump—including the Mar-a-Lago raid and January 6 prosecutions—is well documented and has been the subject of Congressional inquiry. *Supra* n.16. On February 11, 2025—before Plaintiff was sworn in as Director—Senator Durbin wrote to DOJ Inspector General Michael Horowitz requesting an "immediate[]" investigation into "highly credible information from multiple sources that Kash Patel has been personally directing the ongoing purge of senior law enforcement officials at the Federal Bureau of Investigation" and gave a speech about these concerning reports on the Senate floor.[19]

On September 16, 2025, the Senate Judiciary Committee held a nearly five-hour oversight hearing where Director Patel was questioned about his leadership of the FBI, including the "purge of non-partisan FBI career officials."[20]  During a hearing before the House Judiciary Committee the following day, Ranking Member Representative Jamie Raskin stated that Director Patel was "systematically purging the FBI of its most experienced and qualified agents, division leaders, and experts in counterterror, counterintelligence, and cybersecurity" and

---

[19] Letter from Sen. Richard J. Durbin to Hon. Michael E. Horowitz (Feb. 11, 2025), https://perma.cc/CB98-Z47B; Press Release, Sen. Durbin, Durbin: Kash Patel Has Been Personally Directing The Ongoing Purge of FBI Officials (Feb. 11, 2025), https://perma.cc/8CPX-JW2A.

[20] U.S. SENATE COMMITTEE ON THE JUDICIARY, *An oversight hearing to examine the Federal Bureau of Investigation* (Sept. 16, 2025), at 1:02:25 (questions from Sen. Durbin) https://www.congress.gov/event/119th-congress/senate-event/337421?s=2&r=5; *see also id.* at 2:31:33 (questions from Sen. Blumenthal).

"running the FBI … as a political enforcement agency working directly for the President's vengeance campaign."[21]

That same month, former agents Brian Driscoll, Jr., Steven Jensen, and Spencer Evans sued for unlawful termination, alleging that Director Patel and others "initiated a campaign of retribution against [them] for what [Patel and others] deemed to be a failure to demonstrate sufficient political loyalty." *Driscoll et al. v. Patel et al.*, No. 1:25-cv-03109, Dkt. No. 1 ¶ 2 (D.D.C. filed Sept. 10, 2025). According to the complaint, Director Patel stated he would terminate any FBI employee who had worked on any investigation or case against President Trump, while acknowledging that such terminations would violate internal policy and were likely illegal. *Id.* ¶¶ 4-5. Finally, in December 2025, Director Patel confirmed on his own social media account that he had dismantled a public corruption unit comprised of prosecutors who supported the investigation into Trump's efforts to overturn the 2020 election, including the January 6 attack on the Capitol.[22]

The statement that Director Patel "fired members of a counterintelligence squad that was devoted, in part, to Iran" just days before the U.S.-Iran war is also true, as Director Patel admits in the Complaint. *Id.* ¶ 25. His only quibble is that these employees were working "within counterterrorism" rather than within "counterintelligence" and that "only three affected individuals" were working on Iran-related issues. *Id.* These types of "slight inaccuracies of

---

[21] *See* Statement of Rep. Raskin, *supra* n.16.

[22] FBI Director Kash Patel, X (Dec. 31, 2025), https://x.com/fbidirectorkash/status/2006500849300746403?s=46 (stating that FBI under his leadership "dismantled the corrupt CR-15 squad"); *see* Bazelon and Poser, *supra* n.16 (reporting that "CR-15" unit referred to team investigating Donald Trump's attempts to overturn the 2020 election).

31

expression are immaterial" because the statement "is true in substance." *Liberty Lobby*, 838 F.2d at 1296.

The statements in Category 3 must be dismissed because they are true.

## C.    The Second Statement in Category 3 Is Also Protected by the Fair-Report Privilege

In addition to being substantially true, Statement 14 is also protected by the fair-report privilege because it summarizes Director Patel's testimony before the House Permanent Select Committee on Intelligence.  Under D.C. law, the fair report privilege shields defendants from liability for "fair and accurate reports of official proceedings." *Boley v. Atl. Monthly Grp.*, 950 F. Supp. 2d 249, 257 (D.D.C. 2013).  "The privilege even shields 'the accurate report of even false information' so long as it is 'obtained from an official record and proper attribution is given to its source.'" *Chishti*, 2026 WL 1955548, at \*5 (quoting *Oparaugo v. Watts*, 884 A.2d 63, 81 (D.C. 2005)).  "[T]he privilege springs from the recognition that in a democratic society, the public has both the right and the need to know what is being done and said in government." *Dameron v. Washington Mag., Inc.*, 779 F.2d 736, 739 (D.C. Cir. 1985).

For the privilege to apply, the statement must (1) be a "fair and accurate report of a qualified government source," which includes "reports of any official proceeding or action taken by any officer or agency of government," *Boley*, 950 F. Supp. 2d at 257 (citation omitted), and (2) be "properly attributed … to the official source." *Id.* (citation omitted and cleaned up). "[W]here it is 'apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings,' the publication includes the underlying document's essential and important features and thus

32

qualifies for the privilege." *Myers v. D.C. Hous. Auth.*, 2021 WL 1167032, at *3 (D.D.C. Mar. 26, 2021) (quoting *Dameron*, 779 F.2d at 739).

Here, both factors are satisfied. The Article's statement that Director Patel "said in testimony before Congress that the agents had been let go because their work investigating Trump's handling of classified documents had placed them in violation of the bureau's ethics rules" fairly and accurately summarizes his testimony on March 19, 2026, in which he stated that the officers "were terminated for violating their ethical obligations."[23] And the Article expressly attributes the statement in Paragraph 18(q) to Patel's Congressional testimony, which is an "official proceeding protected by the fair report privilege." *Chishti*, 2026 WL 1955548, at *7 (affirming 12(b)(6) dismissal of defamation claim). This claim should be dismissed as a matter of law.

## CONCLUSION

Sixty years ago, the Supreme Court warned that "[c]riticism of those responsible for government operations must be free, lest criticism of government itself be penalized." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966). Those words continue to echo today. Defendants respectfully request that the Court grant their motion to dismiss the Complaint, with prejudice.

---

[23] Testimony of FBI Director Kash Patel, HOUSE PERMANENT SELECT COMMITTEE ON INTELLIGENCE, *HPSCI Open Hearing: 2026 Annual Threat Assessment Hearing* (Mar. 19, 2026), at 2:27:55-2:29:09, https://intelligence.house.gov/event/2026-worldwide-threats-hearing-open/.

Dated: July 27, 2026

Laura Handman (Bar ID: 444386)
Alison Schary (Bar ID: 1014050)
Meenakshi Krishnan (Bar ID: 1617229)
Azeezat Adeleke (Bar ID: 90011862)
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
laurahandman@dwt.com
alisonschary@dwt.com
meenakshikrishnan@dwt.com
azeezatadeleke@dwt.com

Respectfully submitted,
DAVIS WRIGHT TREMAINE LLP

By: */s/ Katherine M. Bolger*
Katherine M. Bolger (Bar ID: NY0205)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com

*Counsel for Defendants*

34