# EXHIBIT 7



**BINNALL**
LAW GROUP
P: 703-888-1943 • F: 703-888-1930
717 King Street, Suite 200 • Alexandria, VA 22314

**Jesse R. Binnall**
PARTNER
D: 571-467-6566
E: jesse@binnall.com

April 17, 2026

**_BY EMAIL_**
Ms. Sarah Fitzpatrick
THE ATLANTIC MONTHLY GROUP
sfitzpatrick@theatlantic.com

      **RE:**    **Upcoming Article on Director Kashyap Patel**

Dear Ms. Fitzpatrick:

This law firm represents Director Kashyap Patel. It has come to light that you intend to publish an article in _The Atlantic_ at 4:00 PM EST today, April 17, 2026, regarding my client, which contains categorically false and defamatory assertions. Should you publish these false allegations, Director Patel will take swift legal action to uphold his reputation. We demand that you remove and refuse to publish each of the following defamatory statements, and afford Director Patel and the FBI a full and reasonable opportunity to respond.

_The Atlantic_ sent FBI OPA a "request for comment" at 2:09 PM EST today with a 4:00 PM EST deadline. The email contains 19 substantive claims about Director Patel, most of which are false, unsourced, and facially defamatory per se. As FBI OPA responded, through AD Williamson, the claims are "one of the most absurd things I've ever read. Completely false at a nearly 100% clip." For example, you make the following defamatory assertions:

1. Claim #5 — Alleges Director drinks "to the point of apparent intoxication" at Ned's (DC) and The Poodle Room (Las Vegas) "in the presence of White House and other administration staff";
2. Claim #7 — Alleges "on multiple occasions in the past year, members of his security detail had difficulty waking Patel because he was seemingly intoxicated and this information was supplied to DOJ and White House officials";
3. Claim #8 — Alleges "breaching equipment" was requested at HQ because Patel had been "unresponsive behind locked doors" and there were concerns about reaching him "in an emergency";
4. Claim #9 — Alleges Director Patel's conduct is a "threat to public safety" including in event of a domestic terrorist attack;
5. Claim #11 — Alleges Director Patel is "dragging his feet on terror cases," delaying/refusing FISA warrants;

**WWW.BINNALL.COM**

*Hit Piece on Director Patel*
*April 17, 2026*
*Page 2 of 3*

6. Claim #14 — Alleges alcohol played a role in Director Patel's public statements about active investigations "including the murder of Charlie Kirk"; and

7. Claim #19 — Alleges Director Patel had security detail shut down the FBI Association Store so he could shop alone and expressed frustration that merchandise "wasn't intimidating enough".

As FBI OPA has made you aware, these allegations are categorically false.

AD Williamson previously publicly rebutted nearly identical claims when they were made on MSNBC's Morning Joe in May 2025, claims that resulted in active defamation litigation. Director Patel has likewise made The Atlantic expressly aware that these allegations are false.

The vast majority of the claims in the draft article rely solely on vague, unattributed sourcing such as "people familiar with the matter" or "some have characterized." Any such purported sources could not possibly possess firsthand knowledge, as the allegations are categorically false. At least one specific claim—allegation #8 regarding the alleged breaching of equipment—has no corroborating public record whatsoever and appears to be either fabricated or drawn from a single hostile and unreliable source. A reasonable and responsible pre-publication investigation, including a simple request to the FBI for relevant documentary evidence, would have quickly disproven this claim and many of the others. In fact, numerous publicly available official records directly contradict the article's assertions. These include the FBI's documented operational successes under Director Patel, such as: Operation Restore Justice, which resulted in 205 arrests and the rescue of 115 children; Operation Black Rose, which led to over 1,100 ICE arrests; the capture of the #8 fugitive on the FBI's Top Ten Most Wanted list within just three months; and the ongoing, successful tracking and disruption of foreign threats to the United States.

Despite these clear refutations, it appears *The Atlantic* is determined to publish these false allegations due to its longstanding animus toward Director Patel. The magazine previously reported that Director Patel was "on the chopping block," revealing an editorial predisposition and what strongly suggests an ongoing campaign to damage his reputation. Moreover, providing less than two hours to respond to 19 detailed allegations involving complex issues of national security and personal conduct is itself strong evidence of reckless disregard for the truth. Accordingly, should *The Atlantic* choose to publish this demonstrably false and defamatory article, Director Patel will have no choice but to take swift legal action to uphold his reputation.

With this letter, you are also on notice of your ongoing obligations to preserve documents related to Director Patel. Accordingly, you must ensure that you and your principals, parent companies, affiliates, agents, subcontractors, reporters, editors, and all sources of information upon which you relied are preserving and retaining all emails, text

**WWW.BINNALL.COM**

*Hit Piece on Director Patel*
*April 17, 2026*
*Page 3 of 3*

messages (including messages sent over social media or messaging platforms such as Facebook, Signal, WhatsApp, Telegram, etc.), audiovisual recordings, voice mails, drafts, notes, communications, documents (including prior versions or iterations of documents), data, and electronically stored information of any kind that relate in any way to these matters. Without any limitation, this requires you to preserve all research and due diligence you conducted or instructed others to conduct relating to Director Patel.

The laws and rules prohibiting destruction of evidence apply to electronically stored information in the same manner as they do to other evidence. Due to its format, electronic information is easily deleted, modified, or corrupted. Accordingly, you must take every reasonable step to preserve this information until this matter is resolved. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup data recycling policies and procedures on any and all devices within your possession, custody, or control. This also obligates you to change the settings on any online messaging application or account to retain all messages. Your obligation to preserve documents applies both to you individually, and to any employee or agent.

Please confirm you will not be publishing this false and defamatory article about Director Patel. Please also confirm that you intend to adhere to your obligations to retain documents, data, communications, and information as set forth above and as required by law. This is not a complete recitation of Director Patel's rights and remedies, all of which are expressly reserved.

I look forward to your prompt response.

Sincerely,

Jesse R. Binnall
Jared J. Roberts

cc:    legal@theatlantic.com
       dbaumgarten@theatlantic.com

**WWW.BINNALL.COM**