**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KASHYAP P. PATEL,<br><br>Plaintiff,<br><br>v.<br><br>ATLANTIC MONTHLY GROUP LLC;<br>SARAH FITZPATRICK,<br><br>Defendants. | Case No.: 1:26-cv-01329-EGS |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO STAY DISCOVERY EXCEPT *TOUHY* REQUESTS**

Katherine M. Bolger (Bar ID: NY0205)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com

Laura Handman (Bar ID: 444386)
Alison Schary (Bar ID: 1014050)
Meenakshi Krishnan (Bar ID: 1617229)
Azeezat Adeleke (Bar ID: 90011862)
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
laurahandman@dwt.com
alisonschary@dwt.com
meenakshikrishnan@dwt.com
azeezatadeleke@dwt.com

*Counsel for Defendants*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

    A.  This Action and the Motion .................................................................. 3

    B.  Director Patel's Intimidation of the Press........................................... 4

    C.  The Anticipated *Touhy* Requests ....................................................... 5

ARGUMENT .................................................................................................................. 6

I.     A DISCOVERY STAY IS WARRANTED .......................................................... 6

    A.  The Motion Is Likely To Be Case Dispositive ................................... 8

    B.  No Discovery Is Necessary To Oppose the Motion............................ 9

    C.  A Finite Discovery Stay Avoids Prejudice to Any Party and Promotes
Judicial Economy ............................................................................... 10

II.    THE *TOUHY* REQUESTS SHOULD BE EXEMPTED FROM THE STAY .................... 12

    A.  The *Touhy* Requests Involve Records Bearing on Director Patel's Ability
To Establish Material Falsity ............................................................. 13

    B.  The *Touhy* Process Is Time-Intensive and Burdensome.................. 17

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biro v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015),
   *and aff'd*, 622 F. App'x 67 (2d Cir. 2015)..................................................................................7

*Bongino v. Daily Beast Co.*,
   477 F. Supp. 3d 1310 (S.D. Fla. 2020) ......................................................................................7

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
   318 F. Supp. 3d 347 (D.D.C. 2018)..........................................................................................14

*Cavanaugh v. Wainstein*,
   2007 WL 1601723 (D.D.C. June 4, 2007).................................................................................18

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014)......................................................................................................16

*Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*,
   201 F.R.D. 1 (D.D.C. 2001).............................................................................................6, 9, 11

*Chevron v. Berlinger*,
   629 F.3d 297 (2d Cir. 2011)......................................................................................................11

*Democracy Defenders Fund v. FBI*,
   No. 1:26-cv-01935 (D.D.C. filed June 2, 2026) ...................................................................3, 19

*Democracy Forward Found. v. FBI et al.*,
   No. 1:26-cv-02075 (D.D.C. filed June 11, 2026) ..................................................................3, 18

*Fitzgerald v. Penthouse Int'l*,
   776 F.2d 1236 (4th Cir. 1985) ..................................................................................................16

*Flynn v. Weissmann*,
   No. 24-cv-02409 (S.D.N.Y. June 6, 2024) .................................................................................7

*Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*,
   263 F.R.D. 1 (D.D.C. 2009)......................................................................................................12

*Harrison v. City of New York*,
   817 F. Supp. 3d 132 (E.D.N.Y. 2025) ......................................................................................17

*In re Terrorist Attacks on Sept. 11, 2001*,
   523 F. Supp. 3d 478 (S.D.N.Y. 2021).......................................................................................18

iii

*In re United Press Int'l,*
106 B.R. 323 (D.D.C. 1989) ...................................................................................14

*\*Institut Pasteur v. Chiron,*
315 F. Supp. 2d 33 (D.D.C. 2004) ...........................................................................8

*Lively v. Wayfarer Studios,*
2025 WL 698287 (S.D.N.Y. Mar. 4, 2025) ..........................................................7, 11

*\*Loumiet v. United States,*
225 F. Supp. 3d 79 (D.D.C. 2016) ........................................................................6, 8

*\*Maljack Prods. v. Motion Picture Ass'n of Am.,*
1990 WL 157900 (D.D.C. Oct. 3, 1990) ...............................................................7, 10

*\*Mar-Jac Poultry v. Katz,*
773 F. Supp. 2d 103 (D.D.C. 2011) .........................................................................12

*Mason v. Am. Prospect,*
2024 WL 4345855 (D.D.C. Sept. 30, 2024) .............................................................2

*\*Michel v. NYP Holdings,*
816 F.3d 686 (11th Cir. 2016) ..................................................................................7

*\*Moldea v. N.Y. Times,*
137 F.R.D. 1 (D.D.C. 1990).......................................................................................7

*Monterey Bay Mil. Hous. v. Ambac Assurance,*
2023 WL 5498962 (S.D.N.Y. Aug. 25, 2023).........................................................18

*Montgomery v. Risen,*
875 F.3d 709 (D.C. Cir. 2017)....................................................................13, 14, 16

*Patel v. Cable News Network, Inc.,*
83 Va. App. 387 (2025) .............................................................................................2

*Patel v. Figliuzzi,*
2026 WL 1097758 (S.D. Tex. Apr. 21, 2026) ..........................................................2

*Patel v. Goldman et al.,*
No. CL-2019-16270 (Va. Cir. Ct. Fairfax Cnty. Nov. 27, 2019) .............................2

*Patel v. Politico, LLC et al.,*
No. CL-19-6745 (Va. Cir. Ct. Henrico Cnty. Nov. 18, 2019) .................................2

*Pearce v. E.F. Hutton Grp.,*
664 F. Supp. 1490 (D.D.C. 1987).............................................................................13

iv

*Phila. Newspapers, Inc. v. Hepps*,
    475 U.S. 767 (1986)................................................................................................13

*Pub. Citizen v. FBI*,
    No. 1:26-cv-01952 (D.D.C. filed June 3, 2026) ...................................................3, 19

*Robertson v. McCloskey*,
    666 F. Supp. 241 (D.D.C. 1987)............................................................................13

*Sai v. Dep't of Homeland Sec.*,
    99 F. Supp. 3d 50 (D.D.C. 2015).............................................................................6

*Shulman v. Becker & Poliakoff, LLP*,
    2018 WL 4938808 (S.D.N.Y. Oct. 11, 2018) .........................................................10

*Sibley v. U.S. Sup. Ct.*,
    786 F. Supp. 2d 338 (D.D.C. 2011).........................................................................9

*Small Bus. in Transp. Coal. v. U.S. Dept. of Transport.*,
    2021 WL 7287302 (D.D.C. Mar. 21, 2021)..............................................................9

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987)...............................................................................14

*Travel Sentry v. Tropp*,
    2008 WL 2097613 (E.D.N.Y. May 15, 2008) .........................................................18

*Trevino v. Dotson*,
    2017 WL 2224833 (N.D. Cal. May 22, 2017) .........................................................12

*Trulock v. Lee*,
    66 F. App'x 472 (4th Cir. 2003) ............................................................................16

*Trump v. BBC*,
    No. 1:25-cv-25894, Dkt. 96 (S.D. Fla. July 14, 2026)............................................13

*Trump v. Dow Jones & Co.*,
    2026 WL 1454048 (S.D. Fla. May 22, 2026) ...........................................................2

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*,
    474 F. Supp. 2d 75 (D.D.C. 2007).........................................................................12

*United States ex rel. Touhy v. Ragen*,
    340 U.S. 462 (1951)................................................................................................5

*White v. Fraternal Ord. of Police*,
    909 F.2d 512 (D.C. Cir. 1990)..............................................................................6, 7

*Zerilli v. Smith*,
   656 F.2d 705 (D.C. Cir. 1981) ..................................................................................................11

**Other Authorities**

28 C.F.R. §§ 16.21-16.29......................................................................................................5, 12

Fed. R. Civ. P. 12(b)(6)...........................................................................................................9, 10

Defendants Atlantic Monthly Group LLC and Sarah Fitzpatrick ("Defendants") respectfully request that this Court stay all discovery pending resolution of their Motion to Dismiss ("Motion" or "Mot."), with a limited exception for Defendants to submit *Touhy* requests to the Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), DOJ and FBI employees, and the FBI Director, Plaintiff Kashyap P. Patel ("Director Patel"), in his official capacity as FBI Director.

## INTRODUCTION

Director Patel, the sitting FBI Director, brings this meritless defamation action solely because he did not like Defendants' truthful, newsworthy reporting critiquing his leadership of the FBI. Because the Complaint is precisely the type of defamation action that risks chilling protected newsgathering and editorial activity through the risk of costly and invasive discovery, a stay is warranted for three reasons. First, the Motion is likely to dispose of the action in its entirety because Director Patel fails to plausibly plead actual malice. Moreover, many of the challenged statements are subject to dismissal on independent grounds, including because they are not defamatory, substantially true, and/or are protected by the fair report privilege. Second, Director Patel requires no discovery to respond to the purely legal issues raised in the Motion. Third, a finite discovery stay will not prejudice Director Patel, while avoiding substantial prejudice to Defendants and promoting judicial economy.

In addition, this case raises another concern. It has been widely reported that Director Patel initiated a criminal leak investigation into Defendant Sarah Fitzpatrick, the journalist who wrote the article at issue ("Article"), and directed the almost unprecedented issuance of subpoenas to journalists who dared report on Air Force One (a story whose accuracy the

President later conceded before the subpoenas were withdrawn).[1]  Coupled with the fact that

Director Patel is, himself, a serial defamation plaintiff, there is a very real risk that this action is

designed to harass and silence the media, rather than actually obtain reputational damages.[2]

Given this context, allowing Director Patel to propound discovery into Defendants'—and

particularly Ms. Fitzpatrick's—newsgathering files poses a grave risk to the First Amendment.

*See Trump v. Dow Jones & Co.*, 2026 WL 1454048, at *1 (S.D. Fla. May 22, 2026) (denying

President Trump's premature request for discovery as "improper").  A stay is, therefore, clearly

appropriate.

Defendants, however, seek a limited exception to the stay to permit them to begin the

process of serving administrative discovery requests directed to the DOJ, FBI, DOJ and FBI

---

[1] Ken Dilanian & Carol Leonnig, "FBI Probing Leaks to Journalist Who Wrote Explosive Article on Kash Patel, Sources Say," MS NOW (May 6, 2026), https://www.ms.now/news/fbi-investigating-leaks-to-journalist-who-wrote-explosive-article-on-kash-patel-sources;        "FBI Reportedly Investigates Journalist Who Wrote About Kash Patel's Heavy Drinking," PBS NEWS HOUR (May 6, 2026), https://www.pbs.org/newshour/show/fbi-reportedly-investigates-reporter-who-wrote-about-kash-patels-heavy-drinking; Devlin Barrett et al., "White House Directed Patel to Oversee Investigation Involving Times Reporting," N.Y. TIMES (July 11, 2026), https://www.nytimes.com/2026/07/11/us/politics/white-house-patel-investigation-times.html; Joseph Gedeon, "Trump Acknowledges that Jet from Qatar Lacks Defensive Systems of Air Force One," GUARDIAN (July 20, 2026), https://www.theguardian.com/us-news/2026/jul/20/trump-air-force-one-qatar; Michael R. Sisak et al., "Government Withdraws Subpoenas of 3 Reporters for The New York Times After Admitting Legal Errors," ASSOCIATED PRESS (July 23, 2026), https://apnews.com/article/usmediatimesair-force-one-42429e4d4da8accc42b6c3ddf3f4fed5.  The Court may take judicial notice of these news articles for the "existence or nature of the articles."  *See Mason v. Am. Prospect*, 2024 WL 4345855, at *5 (D.D.C. Sept. 30, 2024).

[2] *See Patel v. Figliuzzi*, 2026 WL 1097758 (S.D. Tex. Apr. 21, 2026) (dismissing defamation complaint against MSNBC contributor); *Patel v. Cable News Network, Inc.*, 83 Va. App. 387, 397 (2025) (affirming dismissal with prejudice); Complaint at 1, *Patel v. Goldman et al.*, No. CL-2019-16270 (Va. Cir. Ct. Fairfax Cnty. Nov. 27, 2019) (seeking $45 million from *New York Times* and its reporter for defamation and conspiracy; voluntarily dismissed prior to any court action); Complaint at 1, *Patel v. Politico, LLC et al.*, No. CL-19-6745 (Va. Cir. Ct. Henrico Cnty. November 18, 2019) (seeking $25 million from Politico and its reporters for defamation and conspiracy; voluntarily dismissed prior to any court action).

employees, and Director Patel in his official capacity (known as "*Touhy* requests"). The basis for this request is twofold. First, *Touhy* requests often take *years* to process—running on the agencies' own administrative timelines rather than any schedule set by this Court. Recent Congressional oversight requests and FOIA lawsuits involving similar records requests to the DOJ and FBI further underscore these delays, with requests languishing for months.[3] Second, the requested information bears directly both on the truth of the Article, as well as Director Patel's reputation before and after the Article's publication, which complies with the agencies' *Touhy* regulations because it is highly relevant and proportional to the needs of this case under Rule 26. In addition, Director Patel's own Complaint repeatedly relies on purported internal DOJ and FBI records to attempt to refute the Article's reporting, and as the records are already within DOJ and FBI's possession, there is no prejudice to Director Patel in letting the *Touhy* requests proceed. Finally, as explained below, if DOJ, FBI, and Director Patel resist producing these records, that may require early dismissal of this action. For these reasons, it is necessary for Defendants to submit their *Touhy* requests now rather than waiting until after the Motion is resolved. Accordingly, Defendants respectfully request that the Court stay all discovery, except for Defendants' *Touhy* requests, pending resolution of the Motion.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    This Action and the Motion

This action arises from the April 17, 2026 Article published by Defendants reporting on Director Patel's "tumultuous tenure" as FBI Director to date, including reports of his "bouts of

---

[3] *See, e.g.*, *Democracy Forward Found. v. FBI et al.*, No. 1:26-cv-02075 (D.D.C. filed June 11, 2026); *Pub. Citizen v. FBI*, No. 1:26-cv-01952 (D.D.C. filed June 3, 2026); *Democracy Defenders Fund v. FBI*, No. 1:26-cv-01935 (D.D.C. filed June 2, 2026).

excessive drinking," "unexplained absences" from the job, and impulsive behavior while performing his official duties.  Declaration of Katherine M. Bolger ("Bolger Decl.") Ex. 1; Dkt. 1 ("Compl.").

A few days later, Director Patel filed this lawsuit, alleging that several statements in the Article related to his use of alcohol, absences and unreachability on the job, retaliatory firings of employees perceived to be disloyal, concerns about his job security, and focus on the FBI's image, were defamatory.  Compl. ¶¶ 18(a)-(q).  The Complaint repeatedly invokes internal DOJ and FBI records and information in an effort to portray the Article's reporting as false and defamatory.  *See, e.g.*, *id.* ¶¶ 21, 23, 25-26, 41.

Concurrent with this filing, Defendants have filed the Motion, seeking dismissal of Director Patel's claims on several grounds.  As set forth in the Motion, Director Patel falls far short of pleading actual malice, and many of the challenged statements should be independently dismissed because they are not defamatory, substantially true, and/or protected by the fair report privilege.  *See* Mot. at 10-32.  Discovery has not yet commenced in this matter.

### B.    Director Patel's Intimidation of the Press

As noted above, Director Patel has a long and contentious history with the press.  A serial litigant, Director Patel has brought at least four previous defamation actions against media outlets and their reporters, each of which has resulted—whether by court order or voluntary dismissal—in dismissal to date.[4]  Indeed, as the Complaint itself reflects, defamation litigation has become another retaliation tactic in Director Patel's playbook for any reporting that he does not like.  *See*

---

[4] *Supra* note 2.

4

Compl. ¶ 32 (describing that in response to Defendants' request for comment, Director Patel issued a statement stating, "Print it, all false, I'll see you in court—bring your checkbook.").

Director Patel is, of course, not an ordinary citizen marching up the steps of his local courthouse. He is one of the nation's most powerful public officials at the helm of the top domestic intelligence and law enforcement agency. Against that backdrop, it was especially troubling that, shortly after publication of the Article, reports emerged that the FBI had opened a criminal leak investigation into Ms. Fitzpatrick.[5] Although the FBI publicly denied the existence of such an investigation, such a tactic is hardly far-fetched given Director Patel's recent oversight of subpoenas to several journalists for publishing truthful reporting unfavorable to President Trump, which the DOJ subsequently withdrew after a court challenge.[6]

### C.    The Anticipated *Touhy* Requests

As a limited exception to the requested stay, Defendants seek to submit *Touhy* requests to the DOJ, FBI, DOJ and FBI employees, and Director Patel in his official capacity, pursuant to *Touhy* regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); 28 C.F.R. §§ 16.21-16.29 (setting forth "procedures to be followed with respect to the production or disclosure of any material contained in the files of the [DOJ], any information relating to material contained in the files of the Department, or any information acquired by any person while such person was an employee of the Department as a part of the performance of that person's official duties or because of that person's official status").

Defendants' *Touhy* requests, attached in substantially final form hereto and discussed below, seek narrowly tailored categories of documents and testimony directly relevant to

---

[5] *Supra* note 1.

[6] *Id.*

Director Patel's allegations.  *See* Bolger Decl. Ex. 2 (attaching *Touhy* declaration and exhibits, including subpoenas to the DOJ, FBI, and Director Patel).

**ARGUMENT**

**I.    A DISCOVERY STAY IS WARRANTED**

This Court should stay discovery, except as necessary for Defendants to begin their *Touhy* requests, because Defendants' motion to dismiss is likely to resolve the case, and full discovery would unfairly prejudice Defendants.  This court is "vested with broad discretion to manage the conduct of discovery," and it is well settled that "entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion."  *Chavous v. D.C. Fin. Resp. & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2001) (citation omitted); *see also White v. Fraternal Ord. of Police*, 909 F.2d 512, 517 (D.C. Cir. 1990) (decision whether to stay discovery is "committed to the sound discretion of the district court judge").

In determining whether good cause exists to stay discovery, courts "inevitably must balance the harm produced by a delay in discovery against the possibility that a dispositive motion will be granted and entirely eliminate the need for such discovery."  *Chavous*, 201 F.R.D. at 3.  That balance favors a stay when (1) "a motion which would be entirely dispositive if granted is pending," (2) "discovery is not needed to permit the party who seeks discovery to oppose the pending dispositive motion," and (3) the party seeking discovery "would not be prejudiced by a stay."  *Id.* at 5.

Consistent with that guidance, courts in this Circuit routinely grant discovery stays pending the resolution of potentially meritorious dispositive motions.  *See, e.g.*, *Loumiet v. United States*, 225 F. Supp. 3d 79, 85 (D.D.C. 2016) (discovery stayed pending resolution of

6

motion to dismiss); *Sai v. Dep't of Homeland Sec.*, 99 F. Supp. 3d 50, 54 (D.D.C. 2015) (same); *Maljack Prods. v. Motion Picture Ass'n of Am.*, 1990 WL 157900, at *1 (D.D.C. Oct. 3, 1990) (same).

Moreover, courts have repeatedly recognized that discovery stays serve a particularly important function in defamation actions, like this one, that raise "significant First Amendment issues." *Moldea v. N.Y. Times*, 137 F.R.D. 1, 2 (D.D.C. 1990) (granting stay in defamation action). In "defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive" by subjecting media defendants to needless and burdensome discovery. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), *and aff'd*, 622 F. App'x 67 (2d Cir. 2015); *see also White*, 909 F.2d at 517 (affirming order staying discovery in defamation case); *Michel v. NYP Holdings*, 816 F.3d 686, 702 (11th Cir. 2016) (recognizing "powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation, and "[f]orcing publishers to defend inappropriate suits through expensive discovery proceedings … would constrict" "breathing space" that the First Amendment requires); *Lively v. Wayfarer Studios*, 2025 WL 698287, at *2 (S.D.N.Y. Mar. 4, 2025) (granting stay in defamation case pending motion to dismiss ruling); *Flynn v. Weissmann*, No. 24-cv-02409, Dkt. 51, (S.D.N.Y. June 6, 2024) (same); *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1324 (S.D. Fla. 2020) (same, recognizing the "powerful" speech interests at stake).

Here, the First Amendment concerns could hardly be more stark. By bringing this lawsuit, the nation's chief law enforcement officer—who has a documented animosity for the press—is attempting to force a news organization and one of its journalists to disclose

7

information arising from protected newsgathering and reporting activity.  This case comes perilously close to the type of criminal libel claim against the press that the First Amendment forbids.  A discovery stay is therefore warranted.

### A.    The Motion Is Likely To Be Case Dispositive

First, a stay is warranted because the motion to dismiss is likely to be case dispositive.  It is "well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending." *Institut Pasteur v. Chiron*, 315 F. Supp. 2d 33, 37 (D.D.C. 2004) (citation omitted); *see also Loumiet*, 225 F. Supp. 3d at 82 ("[C]ourts in this district 'have often stayed discovery while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.'") (citations omitted).

Here, Defendants' Motion would be dispositive of the case.  *First*, as the Motion explains, Director Patel fails to plausibly plead that Defendants published the Article with actual malice—which is a required element of his claim as a public official, and fatal to the entire Complaint. *See* Mot. Section I.B.  The Complaint alleges no facts showing that Defendants knew any statement in the Article was false or acted with reckless disregard for the truth.  Instead, Director Patel offers a series of conclusory actual malice allegations that courts routinely reject on motions to dismiss—including that Defendants did not credit his pre-publication denials, relied on confidential sources, had "editorial animus" toward him, and "ignored" his "operational successes." *Id.*  None of these theories, alone or together, are sufficient as a matter of law—and the fact that the Article incorporated responses from Director Patel and other government officials further undermines any plausible pleading of actual malice. *Id.*  Nor are the challenged statements from the Article "inherently improbable," as Director Patel claims.  The Article was based on extensive reporting, including interviews with more than two dozen sources and

8

corroboration from multiple current and former officials, and the challenged statements were consistent with widespread prior reporting, publicly filed lawsuits, and Congressional inquiries. *Id*. On this basis alone, the Motion is likely to dispose of the entire case.

*Second*, several of the challenged statements are independently nonactionable because they are not defamatory, substantially true, and/or are protected by the fair report privilege. *See* Mot. Section II.A-II.C. For example, statements that Director Patel "freaked out" and believed he was fired when experiencing a technical issue, as well as his expression of "frustration" with FBI merchandise are not defamatory. *Id*. Statements related to Director Patel's retaliatory firings are substantially true, given that it is a matter of public record that Director Patel has terminated FBI personnel who worked on investigations adverse to President Trump. *Id*. And statements related to Director Patel's testimony before the House Permanent Select Committee on Intelligence are protected under the fair report privilege. *Id*. As the Motion explains, each of these statements should be dismissed for the independent reason that they are not actionable as a matter of law.

Given these many deficiencies in the Complaint, the Motion is likely to be case dispositive.

### B.    No Discovery Is Necessary To Oppose the Motion

Next, a stay is further appropriate because Director Patel does not need discovery to oppose the Motion. *See Chavous*, 201 F.R.D. at 5 (staying discovery pending resolution of plaintiffs' summary judgment motion and defendant's motion to dismiss because discovery was not needed to oppose the pending dispositive motions); *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 347 (D.D.C. 2011) (denying discovery because the plaintiff did not need discovery to resolve the central issue in the pending motion to dismiss); *Small Bus. in Transp. Coal. v. U.S.*

*Dept. of Transport.*, 2021 WL 7287302, at *1 (D.D.C. Mar. 21, 2021) (parenthetical). Defendants have moved to dismiss this case under Rule 12(b)(6). Because the Court may consider "only the allegations contained in the Complaint" and the legal sufficiency of those allegations under Rule 12(b)(6), no discovery is warranted in connection with the Motion. *Id.*

### C.    A Finite Discovery Stay Avoids Prejudice to Any Party and Promotes Judicial Economy

Third, a stay is appropriate because Director Patel will suffer no prejudice from a brief stay of discovery pending resolution of the Motion. Courts routinely recognize that a finite stay for the purpose of resolving a potentially dispositive motion does not unduly prejudice a plaintiff, particularly at the outset of a case. *See Maljack Prods*, 1990 WL 157900, at *1 (granting stay where discovery had not commenced and the requested stay was limited to pendency of motion to dismiss); *Shulman v. Becker & Poliakoff, LLP*, 2018 WL 4938808, at *4 (S.D.N.Y. Oct. 11, 2018) (granting stay where dispositive motion could eliminate the action and any delay would not be substantial). That is especially true here, where the motion to dismiss has only recently been filed, no scheduling order has issued, and the requested stay is finite in duration.

Defendants, by contrast, would suffer substantial prejudice if forced to proceed with discovery before the Court resolves the threshold legal issues raised in the motion to dismiss. This is not a quotidian defamation case, but rather one brought by the sitting FBI Director in retaliation against reporting on his performance of his public duties. Nor are these burdens theoretical, because as noted above, there are already indications that Director Patel may seek to wield governmental power in connection with this lawsuit and broader criticism of his FBI directorship. Accordingly, potentially unnecessary discovery is particularly prejudicial here because it would involve the sitting FBI Director invading Defendants' newsgathering and editorial processes, potentially seeking the identities of confidential sources that may invite only

10

further retaliatory action from Director Patel.  Especially in these circumstances, opening the doors to what may turn out to be needless discovery would severely chill protected speech.

In addition, discovery in this action is likely to present significant, expensive, and complex issues.  As just one example, discovery here will likely require assessment of protections afforded under applicable reporter's shield laws and the First Amendment to the United States Constitution.  *See Zerilli v. Smith*, 656 F.2d 705, 712 (D.C. Cir. 1981) (in assessing reporter's privilege, courts must be "mindful of the preferred position of the First Amendment and the importance of a vigorous press," and "[e]fforts will be taken to minimize impingement upon the reporter's ability to gather news"); *Chevron v. Berlinger*, 629 F.3d 297, 306-07 (2d Cir. 2011) (reporter's privilege "intended to protect the public's interest in being informed by 'a vigorous, aggressive and independent press,' by limiting the circumstances in which litigants may obtain access to press files through court-ordered discovery").  Indeed, the application of the shield law "raises delicate and complicated issues which would increase the burden of responding to discovery."  *Lively*, 2025 WL 698287, at \*1.  Accordingly, in addition to the ordinary financial and resource burdens associated with document collection and production, Defendants would be forced to navigate complex privilege issues that may prove entirely unnecessary if the Court grants the Motion.

A stay would also promote judicial economy.  Resolving threshold dispositive motions before discovery avoids the "wast[e] the time and effort of all concerned" and "judicial resources."  *Chavous*, 201 F.R.D. at 2.  If this Court dismisses Director Patel's claims before discovery commences, then unnecessary motion practice and other burdens on the Court can be avoided.

11

## II.    THE *TOUHY* REQUESTS SHOULD BE EXEMPTED FROM THE STAY

This Court should, nonetheless, exempt Defendants' *Touhy* requests to the DOJ, FBI, and Director Patel from the requested discovery stay.  *See* Bolger Decl. Ex. 2.  Courts routinely permit targeted discovery on discrete issues, while staying broader merits discovery in order to efficiently manage their dockets.  *See Mar-Jac Poultry v. Katz*, 773 F. Supp. 2d 103, 116 (D.D.C. 2011) (district court "may limit discovery to the 'threshold issue of falsity' before engaging in "the more burdensome discovery surrounding evidence of" actual malice") (quoting *Weyrich v. New Republic*, 235 F.3d 617, 625 (D.C. Cir. 2001)); *Guantanamera Cigar Co. v. Corporacion Habanos, S.A.*, 263 F.R.D. 1, 5 (D.D.C. 2009) (permitting discovery on certain aspects of claim, but not others); *Trevino v. Dotson*, 2017 WL 2224833, at \*1 (N.D. Cal. May 22, 2017) (staying discovery with exception related to one substantive issue as well as contact information or location of certain defendants).

Here, Defendants seek discovery under the *Touhy* procedures set forth in 28 C.F.R. §§ 16.21-16.29.  These regulations establish the exclusive mechanism by which third parties may request records from, or testimony by employees of, the DOJ and its component agencies, including the FBI.  *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am.*, 474 F. Supp. 2d 75, 79 (D.D.C. 2007) (under *Touhy*, federal agencies "adopt procedures … for responding to subpoenas and other requests for testimony or documents").

Importantly, *Touhy* requests proceed pursuant to the DOJ and FBI's own administrative review, independent of any discovery schedule set by this Court.  Defendants must first submit a written request describing with specificity the documents, information, and testimony sought. 28 C.F.R. §§ 16.22(c)-(d).  The request is then reviewed by the U.S. Attorney's Office and, as appropriate, referred to the relevant DOJ components for further evaluation.  *Id.* § 16.22(b).  The

12

DOJ and FBI must assess the request under multiple regulatory criteria, including privilege, confidentiality, law-enforcement interests, and whether compliance would promote the agencies' interests. *Id.* § 16.26. That administrative process can take substantial time in the ordinary course, *see infra* Section II.B, and will undoubtedly be more complicated here, as the requests concern several categories of information involving the sitting FBI Director. Then, depending on the agencies' responses, Defendants may move to compel discovery before this Court, and/or the government may file a statement of interest challenging the *Touhy* requests. *See, e.g.*, Statement of Interest by the United States of America, *Trump v. BBC*, No. 1:25-cv-25894, Dkt. 96 (S.D. Fla. July 14, 2026) (statement of interest filed by the federal government regarding the BBC's *Touhy* requests to several agencies, including the FBI and DOJ employees, in defamation case brought by the President).

Because this is a burdensome process, Defendants respectfully request that they be permitted to serve *Touhy* requests notwithstanding the discovery stay for two reasons.

### A. The *Touhy* Requests Involve Records Bearing on Director Patel's Ability To Establish Material Falsity

*First*, Director Patel cannot carry his burden of establishing the Articles are materially false—nor can Defendants establish that the article is substantially true—without access to DOJ and FBI records and testimony. To prevail in this action, the First Amendment requires Director Patel to prove, by clear and convincing evidence, that the challenged statements are materially false. *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775-76 (1986); *see also Montgomery v. Risen*, 875 F.3d 709, 713 (D.C. Cir. 2017) (where reporting involves public figure or a matter of public concern, plaintiff "must make a showing of falsity as an element of his affirmative case"); *Pearce v. E.F. Hutton Grp.*, 664 F. Supp. 1490, 1512 (D.D.C. 1987) (requiring "clear and convincing" evidence). Minor errors and "slight inaccuracies of expression" do not constitute

13

material falsity. *Tavoulareas v. Piro*, 817 F.2d 762, 787 (D.C. Cir. 1987). If the truth or falsity of public commentary cannot be determined, the First Amendment requires that the "scales be tipped in favor of protecting true speech." *Hepps*, 475 U.S. at 767; *see also Robertson v. McCloskey*, 666 F. Supp. 241, 248 (D.D.C. 1987) (clear and convincing standard of proof for falsity "resolve[s] doubts in favor of speech when the truth of a statement is difficult to ascertain conclusively"). Accordingly, dismissal is required where a plaintiff cannot establish material falsity. *See, e.g.*, *In re United Press Int'l*, 106 B.R. 323, 328 (D.D.C. 1989) (dismissing defamation lawsuit because plaintiff failed to establish that challenged stories were "'false' within the meaning of [*Hepps*]"); *Montgomery*, 875 F.3d at 711 (affirming dismissal where plaintiff failed to "marshal sufficient evidence" of falsity).

As a result, to rebut any of Director Patel's allegations that the Article is materially false as well as demonstrate substantial truth, Defendants are entitled to information within DOJ and FBI's possession, custody, and control that bears on the truth of the Article's reporting and Director Patel's reputation. This information is plainly "relevant" to the parties' claims and defenses and proportional to the needs of this case under Rules 26 and 45. *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 352 (D.D.C. 2018) (concluding that testimony requested from DOJ was "essential to [news outlet's] defense against the defamation action and it cannot be obtained from any other source"). As representative examples, Defendants' requests seek:

- Information identifying key witnesses—for example, members of Director Patel's staff, security detail, advisory groups, and travel and calendar-access personnel—likely to have information related to Director Patel's alcohol consumption, absences and unreachability, retaliatory firings, concerns about his job security, and focus on image.

- Information in connection with Congress's repeated calls for information regarding Director Patel's management of the FBI and use of government resources, as well as information about this action and Defendants.

- Requests regarding Director Patel's alcohol consumption, including, for example, disclosures and/or vetting materials in connection with Director Patel's confirmation and

14

position; annual ethics filings; any drug or alcohol testing, examination, or questionnaire administered to or discussed with Director Patel; reimbursements to the DOJ or FBI made by or in connection with Director Patel; Director Patel's membership or attendance at private clubs, social spaces, and recreational facilities; and Director Patel's receipts in connection with these outings.

- Requests regarding Director Patel's absences and unreachability and the specific incidents reported in the Article pertaining to breaching equipment and an IT lockout, including Director Patel's calendars, schedules, and physical presence at FBI installations; Director Patel's travel and use of FBI aircraft.

- Requests regarding Director Patel's retaliatory firings, including records involving terminated employees and the administration of polygraphs in connection with perceived disloyalty.

- Requests regarding Director Patel's focus on his image, including information regarding FBI- or Director Patel-branded merchandise.

Bolger Decl. Ex. 2 (attaching Exhibits D-F, the DOJ, FBI, and Director Patel subpoenas).  All of these materials are exclusively available from the DOJ and FBI, and Defendants must seek their production to defend themselves in this litigation.

That is particularly so here where Director Patel's own material falsity allegations depend extensively on information within the possession, custody, and control of the DOJ, FBI, and Director Patel himself as FBI Director.  The Complaint repeatedly invokes internal DOJ and/or FBI records and information in an effort to refute the Article's reporting.  For example, as to the breach equipment request, Director Patel alleges that, under "standard protocol," FBI protection details are provided with breach equipment, and asserts that "no internal incident report" or "SWAT deployment record" indicate otherwise.  Compl. ¶¶ 21, 41.  The Complaint further relies on internal FBI information and protocols to dispute the Article's reporting regarding Director Patel's attendance, conduct, and management of personnel, alleging, among other things, that Director Patel is "at FBI headquarters nearly every single day," that FBI personnel disciplinary/termination actions are taken only where employees "acted unethically or undermined the mission," that Director Patel's calendar reflects only "approximately 17 personal

15

days," and that "FBI security-detail protocols" refute the report that security personnel had difficulty waking him. *Id.* ¶¶ 24-26. Director Patel also alleges that his security detail denied that he complained about FBI merchandise. *Id.* ¶ 25. To be clear, the presence or absence of any of these purported records or testimony cited by Director Patel does not itself establish material falsity. But Director Patel's *own allegations* make clear that his theory of material falsity—and therefore his ability to proceed with this action—depends heavily on internal DOJ and FBI records and information that Defendants are entitled to test through discovery.

There is also good reason for this *Touhy* discovery to happen early in the litigation. If the DOJ or FBI declines to produce responsive records, Director Patel's claims must be dismissed for two independent reasons. First, if Director Patel cannot otherwise adduce evidence establishing material falsity, he cannot prove his defamation claim. For example, in *Montgomery v. Risen*, the defamation plaintiff "provided virtually no evidence that any of [the defendant's] factual statements were untrue," and his "refusal to proffer evidence about the [challenged statements] [was] fatal" to his case. *Montgomery*, 875 F.3d at 714; *see also Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) ("Falsity of a statement is needed to make out a claim of libel."). And second, if the DOJ and/or FBI were to attempt to invoke the law enforcement or state secrets privileges in response to these requests, that invocation (if approved by the Court) may separately mandate dismissal of Director Patel's action. *See, e.g.*, *Fitzgerald v. Penthouse Int'l*, 776 F.2d 1236, 1243 (4th Cir. 1985) (dismissing plaintiff's defamation case where state secrets privilege shielded information required to prove truth or falsity of the allegedly defamatory statements); *Trulock v. Lee*, 66 F. App'x 472, 477-78 (4th Cir. 2003) (same). The parties should know as soon as possible whether the DOJ and FBI will provide the requested information and witnesses, and if pending litigation is any indication, there is significant reason to believe that the agencies

16

will resist disclosure. *See BBC*, Dkt. 96 at 7-12 (S.D. Fla. July 14, 2026) (setting forth the government's preliminary objections to the BBC's *Touhy* requests).

### B.    The *Touhy* Process Is Time-Intensive and Burdensome

*Second*, Defendants must be permitted to pursue their *Touhy* requests during the pendency of the Motion because the *Touhy* process is inherently slow and may culminate, in DOJ's own words, in a "potentially lengthy litigative battle."[7]   Unlike ordinary discovery requests, *Touhy* requests require review, assessment, and coordination among multiple agency stakeholders and the parties, frequently followed by motion practice over the agency's objections, redactions, or withholding determinations.

Recent cases illustrate that this process routinely takes *years* to complete.  In *Harrison v. City of New York*, for example, the plaintiff served *Touhy* requests in February and August 2023 seeking a relatively narrow set of records related to the execution of a warrant.  817 F. Supp. 3d 132, 140-41 (E.D.N.Y. 2025).  Following the service of requests:

> After several months of correspondence between plaintiffs and the FBI about the breadth of plaintiffs' Touhy request and the timing of the FBI's production, the FBI formally responded to the request on March 12, 2024.  The FBI noted a variety of objections, bases for withholding documents, and bases for redacting documents.  The FBI objected that the request was "overbroad and would place an undue burden on the FBI" to the extent the request sought "documents other than those regarding law enforcement's knowledge of the correct apartment at which to execute the arrest warrant."  The FBI also objected to the extent the request sought information subject to any privilege or otherwise protected from disclosure under the FBI's Touhy regulations or any other law.  Along with these objections, the FBI produced 457 pages of records, many of which were substantially or completely redacted.  The response stated that it constituted a final agency decision in response to the Touhy request.

---

[7] DOJ Manual, "1-6.220-Evaluation of the Demand," https://www.justice.gov/jm/jm-1-6000-doj-personnel-witnesses.

*Id.* at 141 (emphasis added and cleaned up).  The parties then litigated the FBI's redactions and objections, resulting in the court ruling in November 2025.  *Id.*  In total, for a relatively narrow set of records that did not involve the sitting FBI Director, the process took ***nearly three years*** to obtain the FBI's response and resolve the resulting disputes.

Unfortunately, that timeline is the norm, not the exception, with *Touhy* requests.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 486 (S.D.N.Y. 2021) (Touhy request to FBI culminating in a motion to compel ruling nearly three years later); *Cavanaugh v. Wainstein*, 2007 WL 1601723, at *3 (D.D.C. June 4, 2007) (*Touhy* request to DOJ culminating in a motion to compel ruling two-and-a-half years later); *Monterey Bay Mil. Hous. v. Ambac Assurance*, 2023 WL 5498962, at *2 (S.D.N.Y. Aug. 25, 2023) (*Touhy* request requiring "several months" of conferrals between the parties and subsequent litigation of the *Touhy* responses); *Travel Sentry v. Tropp*, 2008 WL 2097613, at *1 (E.D.N.Y. May 15, 2008) (*Touhy* request involving agency "struggl[ing] for four months to conduct a search," resulting in multiple rounds of litigation and a ruling a year after the initial *Touhy* request).

The timing concerns are particularly acute here.  First, Director Patel is the sitting FBI Director, which may present additional issues concerning the independence of the *Touhy* review process and could generate further disputes requiring judicial intervention.  Second, although Defendants' requests are narrowly tailored to the allegations in the Complaint and the challenged statements in the Article, the categories of records and testimony Director Patel himself has placed at issue are necessarily broad and implicate multiple internal DOJ and FBI systems, personnel, and protocols.

The likelihood of delay is further underscored by ongoing public disputes concerning Director Patel, DOJ, and FBI's stonewalling of Congressional oversight and records requests

18

concerning Director Patel.  As noted above, Representative Raskin and Senator Durbin recently emphasized Director Patel's repeated failures to respond to several prior congressional requests for information related to his use of taxpayer resources.[8]  Pending FOIA litigation likewise confirms substantial delays in DOJ and FBI responses concerning records related to Director Patel's job performance and the reporting at issue here.  *See* Complaint ¶¶ 8-37, *Democracy Forward Found. v. FBI et al.*, No. 1:26-cv-02075 (D.D.C. filed June 11, 2026) (describing DOJ and FBI's failure to respond to FOIA requests for records related to Director Patel's job performance and the Article's reporting served in March 2026); Complaint ¶¶ 6-18, *Pub. Citizen v. FBI*, No. 1:26-cv-01952 (D.D.C. filed June 3, 2026) (describing FBI's failure to respond to FOIA requests for records regarding Director Patel's use of government resources to travel to the 2026 Winter Olympics served in February 2026); Complaint ¶¶ 23-35, *Democracy Defenders Fund v. FBI*, No. 1:26-cv-01935 (D.D.C. filed June 2, 2026) (same).

Given the substantial time, coordination, and potential motion practice inherent in the *Touhy* process—and because the requested records may be case-dispositive—it is appropriate to permit Defendants to pursue that discovery as an exception to the requested stay.

## CONCLUSION

For the foregoing reasons, this Court should stay discovery pending resolution of the Motion, with the exception of Defendants' *Touhy* requests to the DOJ, FBI, and Director Patel.

---

[8] Letter from Rep. Raskin and Sen. Durbin to Director Patel (July 8, 2026), https://democrats-judiciary.house.gov/sites/evo-subsites/democrats-judiciary.house.gov/files/evo-media-document/2026-07-08-raskin-durbin-to-patel-fbi-re-jet-usage-letter.pdf.

Dated: July 27, 2026

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Laura Handman (Bar ID: 444386)
Alison Schary (Bar ID: 1014050)
Meenakshi Krishnan (Bar ID: 1617229)
Azeezat Adeleke (Bar ID: 90011862)
1301 K Street NW, Suite 500 East
Washington, D.C. 20005
Telephone: (202) 973-4200
laurahandman@dwt.com
alisonschary@dwt.com
meenakshikrishnan@dwt.com
azeezatadeleke@dwt.com

By: */s/ Katherine M. Bolger*
Katherine M. Bolger (Bar ID: NY0205)
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020
Telephone: (212) 489-8230
katebolger@dwt.com

*Counsel for Defendants*

20